# DE LA VERGNE REFRIGERATING MACHINE COMPANY *v.* FEATHERSTONE.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE
SEVENTH CIRCUIT.

No. 1099. Argued November 16, 17, 1892. — Decided January 9, 1893.

A patent for an invention issued to the inventor, " his heirs or assigns," after his death, is a valid patent, and should be construed in the alternative as a grant to him, or his heirs or assigns.

Such a construction would include a grantee or grantees in being, capable of taking the patent and to whose benefit the grant would enure.

In such case an executor *de son tort* may, in Texas, make an assignment of an interest in the patent which will convey a valid title to the assignee, if not repudiated by the executor or administrator of the inventor when duly appointed, or by his children.

An inventor agreed with an associate to give him an interest in a patent for the invention when issued, and the associate agreed to procure its issue. The patent was issued after the inventor's death to the inventor by name, " his heirs or assigns." His administratrix conveyed to the associate the promised interest, and subsequently the remaining interest, and all persons interested in the estate acquiesced in the conveyances. *Held,* that the patent should be construed as a grant to the associate as assignee, and should be held to have been obtained by the authority of the administratrix as well as of the associate.

Failure, in such case, to record title papers in the Patent Office, it appearing that the administratrix and the in-part equitable owner had obtained the patent, cannot make the patent void.

When an inventor makes oath to an application for a patent, filed in his life-time, an amendment to it within the scope of the original oath and of the invention described in the original specification, made after his death without filing a new oath or a new power of attorney, is valid, and does not render the patent void.

This was a bill in equity charging appellees with infringement of letters patent of the United States No. 175,020, issued to "James Boyle, his heirs or assigns," March 21, 1876, for an improvement in gas-liquefying pumps.

The bill set forth, among other things, a full history of the proceedings before the Patent Office, and alleged that, shortly after filing his application for the patent, James Boyle died, and that thereafter his administrator, who was also an assignee of a half interest, prosecuted the application, paid the final fee, and took out the patent, it being issued in the name of "James Boyle, his heirs or assigns."

Appellees demurred generally to the bill, and, the cause having been heard by the Circuit Court thereon, a decision was announced sustaining appellees' demurrer, on the ground that Boyle, having previously died, there was no grantee in being capable of taking at the time the patent was issued, and hence that the patent never had any validity. The opinion will be found reported in 49 Fed. Rep. 916.

A decree was thereupon entered dismissing the bill for want of equity, and complainant appealed to the Circuit Court of Appeals for the Seventh Circuit, which entered an order certifying several questions or propositions of law upon which it desired the instruction of this court for their proper decision. These questions or propositions of law are as follows:

"I.

"On October 29, 1875, James Boyle, of Houston, Texas, having made an invention in refrigerating machines, executed an application for a patent therefor in due form and verified by the proper oath, and appointed Alexander & Mason his attorneys to prosecute the same, which application was filed in the Patent Office November 24, 1875.

"Thereafter and on the 27th day of November, 1875, and

while said application was still pending in the Patent Office, James Boyle died, leaving him surviving a widow and four children.

"Thereafter the said application was prosecuted by the said attorneys under the direction of Thomas L. Rankin, who had been appointed temporary administrator of the estate of James Boyle, deceased March 9, 1876, and who obtained the said patent and paid all the Patent Office and solicitors' fees therefor. The patent issued March 21, 1876, and the grantees therein expressed were 'James Boyle, his heirs or assigns.'

"On these facts the instruction of the court is desired upon the question —

"1. Whether the grant to James Boyle, his heirs or assigns, was void because of the death of Boyle before the patent was issued or whether such grant was valid on the ground that it should be construed in the alternative as a grant to James Boyle or his heirs or assigns, the words 'heirs or assigns,' including a grantee or grantees in being capable of taking the patent, and the grant enuring to his or their benefit.

"II.

"Prior to the aforesaid application of James Boyle for a patent he made a contract with said Thomas L. Rankin by which Rankin agreed to advance money to apply for and obtain the patent, and Boyle agreed to assign to Rankin one-half interest in the invention and patent.

"On December 2, 1875, after the death of James Boyle and while the application for the patent was pending in the Patent Office, Rankin made an agreement with Theresa Boyle, the widow of James Boyle, then acting as executrix *de son tort,* in the words and figures following:

"'Houston, Texas, *December* 2, 1875.

"'*Article of Agreement Between T. L. Rankin and Mrs. James Boyle.*

"'T. L. Rankin of the first part, agrees to complete the ice machine commenced by himself and James Boyle and to pro-

vide for Mrs. Boyle while said machine is under construction until next spring, say May first, and also to press the application for patents on the part of said machine claimed by James Boyle and in case said machine is a success, and said patents are obtained, is to use his best efforts to introduce the same, and to divide with Mrs. Boyle the profits of said business until she shall have received five thousand dollars for her share; after which, Mrs. James Boyle agrees to release any further interest in said patents to be obtained and the machines then in use, and from this date, agrees that the said T. L. Rankin shall operate and control any interest James Boyle had pertaining to ice machines, together with his interest in the Arctic Ice Company. Stock to vote, proxy of same.

" ' T. L. RANKIN.

" ' THERESA BOYLE.

" ' Witness : W. T. SCOTT.'

" After the grant of the patent as above stated, and on the 18th day of July, 1876, the issue of temporary letters of administration to Rankin were superseded by the appointment of the said Theresa Boyle as permanent administratrix. She thereafter filed an inventory of her husband's estate, in which she included the patent in question as held and owned jointly with Thomas L. Rankin.

"Neither Theresa Boyle, nor her children nor Thomas L. Rankin ever repudiated the proceedings whereby said patent was obtained, but enjoyed the beneficial ownership thereof, and sold their interests therein for a valuable consideration.

" On these facts the instruction of the court is desired as to the following questions :

" 2. Whether the above-quoted instrument should, under the above facts, be construed as an assignment to Thomas L. Rankin.

" 3. Whether the patent should be construed as a grant to Thomas L. Rankin as assignee.

" 4. Whether, under the above-recited facts, the patent should be held to be obtained by the authority of Theresa Boyle as administratrix as well as of Thomas L. Rankin.

## "III.

"During the proceedings in the Patent Office, and after the death of James Boyle, the specification originally filed with said application for a patent was amended within the scope of the original oath and the invention described in said original specification and by way of limitation of the claims, but without the filing of any new oath or power of attorney.

"5. Did such amendment render the patent void?

"6. Is the patent void because no oath was filed after Boyle's death?

"It also appearing that the cause of action below was disposed of upon a demurrer filed to appellant's bill and exhibits, which demurrer the court below sustained and dismissed the bill, and no witnesses being examined in said cause, it is further ordered that the record as printed in this cause be also certified up as a full statement of facts upon which the questions and propositions stated for the instruction desired from the Supreme Court of the United States are based, and the clerk of this court is hereby directed to transmit to the clerk of the Supreme Court of the United States a certified copy of said record, together with this certificate."

Sections 4884, 4886, 4895 and 4896 of the Revised Statutes are as follows:

"SEC. 4884. Every patent shall contain a short title or description of the invention or discovery, correctly indicating its nature and design, and a grant to the patentee, his heirs or assigns, for the term of seventeen years, of the exclusive right to make, use and vend the invention or discovery throughout the United States, and the Territories thereof, referring to the specification for the particulars thereof. A copy of the specification and drawings shall be annexed to the patent and be a part thereof."

"SEC. 4886. Any person who has invented or discovered any new and useful art, machine, manufacture or composition of matter, or any new and useful improvement thereof, not known or used by others in this country, and not patented or described in any printed publication in this or any foreign country, before his invention or discovery thereof, and not in

public use or on sale for more than two years prior to his application, unless the same is proved to have been abandoned, may, upon payment of the fees required by law, and other due proceedings had, obtain a patent therefor."

"SEC. 4895. Patents may be granted and issued or reissued to the assignee of the inventor or discoverer; but the assignment must first be entered of record in the Patent Office. And in all cases of an application by an assignee for the issue of a patent, the application shall be made and the specification sworn to by the inventor or discoverer; and in all cases of an application for a reissue of any patent, the application must be made and the corrected specification signed by the inventor or discoverer, if he is living, unless the patent was issued and the assignment made before the eighth day of July, eighteen hundred and seventy.

"SEC. 4896. When any person, having made any new invention or discovery for which a patent might have been granted, dies before a patent is granted, the right of applying for and obtaining the patent shall devolve on his executor or administrator, in trust for the heirs at law of the deceased, in case he shall have died intestate; or if he shall have left a will, disposing of the same, then in trust for his devisees, in as full manner and on the same terms and conditions as the same might have been claimed or enjoyed by him in his lifetime; and when the application is made by such legal representatives, the oath or affirmation required to be made shall be so varied in form that it can be made by them."

*Mr. Ephraim Banning* and *Mr. Edmund Wetmore* for appellant. (*Mr. Hubert A. Banning* was with them on the brief.)

*Mr. Solicitor General* also filed a brief for appellant.

*Mr. L. L. Bond,* (with whom was *Mr. C. E. Pickard* on the brief,) for appellees.

I. The patent in question is void because it issued in the usual form to James Boyle, who was dead at the time of the

granting of said letters patent, and the Circuit Court was right in sustaining the demurrer.

All rights and remedies of inventors are based upon the constitution and statutes, which must be followed in order to obtain a valid patent. *Gayler* v. *Wilder*, 10 How. 477, 493; *Wilson* v. *Rousseau*, 4 How. 646, 674.

The statutes of the United States recognize only three classes of persons to whom letters patent for an invention may issue: (1) the inventor himself, Rev. Stat. § 4886; (2) an assignee of the inventor, where an assignment is made before the issuing of the letters patent, Rev. Stat. § 4895; and (3) the personal representatives of the inventor, Rev. Stat. § 4896.

It may be claimed that this grant to "James Boyle, his heirs or assigns," should be construed as a grant to the personal representative of James Boyle, James Boyle having died pending the application. This cannot be. *Eagleton Manufacturing Co.* v. *West*, 111 U. S. 490, 499. One cannot obtain by a so-called equitable construction of a grant what he could not legally obtain by direct grant.

Letters patent for an invention are a grant from the sovereign power, creating a monopoly for a limited period. The word was originally used in England to describe written instruments, emanating from the king, whereby lands, honors or franchises were conferred upon individuals. In this respect the grant of letters patent for inventions are not distinguished from other grants under the royal prerogative. To be sure, the property in such letters patent is regarded as personal property. But it is an "incorporeal" property, and differs from most other personal property in that it "lies in grant and not in livery"—it is created by grant, under the great seal of state, and can be created in no other way, as is the case with all grants under the royal prerogative.

When created, this property can be transferred only by grant, *i.e.*, by deed of assignment, and not by delivery of possession, as is the case with other personal property. While, therefore, the property right is "personal property" rather than "real estate," under one of which two heads all property

is somewhat artificially classed, yet this property more nearly resembles the so-called "incorporeal hereditaments" of the law than the tangible things generally classed as personal property; the great difference being that one is incorporeal, the other corporeal; the one can be created and transferred only by deed or grant in writing, the other can be transferred by mere delivery of possession. Indeed, it was because of the fact that personal property could be transferred by mere delivery of possession and carried away by the grantee, whose person it followed, that the old rules of common law as to the word " heirs" became inapplicable to the transfer of corporeal personal property. But in the case of property in a patent, which can be created and transferred only by grant and deed of assignment, a kind of property is found which comes in its nature really between "land" or "real estate" and corporeal personal property, and which more closely resembles, as we have said, the "incorporeal hereditaments" of the common law than it does the tangible things of which personal property was originally made up.

Coming back, then, to a consideration of this proposition, we insist that a patent for an invention is a grant by the State of the exclusive privilege of making, using and vending it, and authorizing others to make, use and vend it. It differs from other letters patent only in the nature of the subject-matter of the grant. See *Marbury* v. *Madison*, 1 Cranch, 137, 141, and *Butterworth* v. *Hoe*, 112 U. S. 50, where the court considered letters patent for inventions and letters patent for lands together, as being grants of similar nature, and subject to the same rules and laws.

Now it is, and always has been, requisite to a grant *in præsenti* (which letters patent for inventions are) that there should be a grantee *in esse*, to take at the time of the grant. It is absolutely essential to the validity of a grant or deed that there should be a grantor and a grantee — a person capable of granting and a person capable of taking. A grant *in præsenti* must be to a person *in esse* at the time of the grant.

Following this old rule of law, the Supreme Court of

the United States, in the case of *Galloway* v. *Finley*, 12 Pet. 264, held that a patent of land to a dead man and his heirs was void. In the case of *Galt* v. *Galloway*, 4 Pet. 332, the Supreme Court of the United States, pp. 344, 345, held that under the laws of the United States the location of land in the name of a man deceased at the time of the location was absolutely void. The same ruling was made in the case of *McDonald* v. *Smalley*, 6 Pet. 261. Under the principles which we contend for, if a grant of land to a person not *in esse* at the time of the grant is void, the grant of letters patent to a man not *in esse* at the time of their issue is void.

It appears from the bill that James Boyle was dead at the time of the grant of the letters patent in question; he was therefore not *in esse*, and under the decisions we submit that if the letters patent are to be considered a grant to James Boyle, there can be no possible doubt but that the patent in question is absolutely void *ab initio*. Indeed this does not seem to be seriously questioned.

The controversy in this case, so far as this point goes, then turns upon the word "heirs" in the statute and in the letters patent. What does the word "heirs" mean? Is it descriptive of a class of persons to whom in the alternative the right shall go, or is it a word which defines the nature of the estate which the grantee shall take? Is it a word of "purchase" or a word in "limitation (*i.e.*, definition) of the estate?" If the first position be the correct one, then the patent might be, were it not for the statutes above considered, valid; if the second, then it is void because the word adds no new class to take as a "purchaser," or grantee. We maintain that the second is the true construction to place upon the statute and upon the letters patent; that the words "his heirs" name no new class to take as grantees in case of the inability, from death or otherwise, of the patentee to take; that they are words of "limitation of the estate and not words of purchase." See *Wilson* v. *Rousseau*, 4 How. 646, 675.

The sole purpose of using the word "heirs" in the statute and the letters patent is, to prevent the grant from being

determined by the death of the patentee. Upon no other construction of the statute can the word "heirs" be given any meaning, and it is a settled principle of statutory construction that a statute must be construed so as to give effect to every word, if possible.

Again, that the word "heirs," as used in the Revised Statutes, § 4884, and in letters patent themselves, is a word of "limitation of an estate" and not a word of "purchase," is evident from the long line of decisions which hold that upon the death of the patentee the title to the patent goes not to the heirs themselves, but to the personal representative of the deceased, in trust for his heirs or devisees. If the word "heirs" were to be construed as a word of purchase, then, being "purchasers," they would be the ones who would take the title; and yet it has been universally held by all the courts that the title goes to the personal representative in trust for the heirs, and not to the heirs directly. *Shaw Relief Valve Co.* v. *New Bedford,* 19 Fed. Rep. 753; *Bradley* v. *Dull,* 19 Fed. Rep. 913; *Hodge* v. *North Missouri Railroad,* 4 Fish. 161.

It seems clear, therefore, that the patent must be construed as reading to "James Boyle *and* his heirs or assigns." — to "James Boyle and his heirs," if he dies without assigning, or to his assigns when he shall assign it.

II. The certificate recites an agreement between T. L. Rankin and Theresa Boyle, dated December 2, 1875. James Boyle died November 27, 1875, and at the date of this contract there was no administrator. Rankin was appointed temporary administrator March 9, 1876, and Mrs. Boyle full administratrix July 5, 1876. The second question upon which instruction is desired is, "Whether the above quoted instrument should, under the above facts, be construed as an assignment to Thomas L. Rankin."

This does not appear to be a difficult question, if the court is called to pass upon the contract alone. But it was contended, and doubtless will be again, that under this paper Rankin was entitled to the patent when it issued, as the assignee of James Boyle. We do not see how this contract

can be made available by appellant, because if Rankin was the assignee, the patent should have issued under section 4895, which is special to assignees, instead of under the general clause, section 4884, as it was.

There is no sense in which this paper can be classed or treated as an assignment, and there is no allegation in the bill that Rankin ever paid Mrs. Boyle five thousand dollars; and therefore, upon the showing of the bill itself, this paper is null and void; and has never been so far operative as to enable Rankin to demand an assignment of the patent under it. *Railroad Co.* v. *Trimble,* 10 Wall. 367, 382.

As to what constitutes an assignment see *Waterman* v. *Mackenzie,* 138 U. S. 255. That the Rankin agreement is not an assignment of that kind is fully supported by that case and by *Rice* v. *Boss,* 46 Fed. Rep. 195.

III. The patent sued on is void, because the application was amended in the Patent Office, pending allowance, after the death of James Boyle, without authority, and without any new application or oath by his personal representatives.

We contend that the patent so issued is void, for the following reasons : (1) Because it was not issued upon any petition or oath of the personal representative. *Eagleton Manufacturing Co.* v. *West Manufacturing Co.,* 111 U. S. 490 ; (2) Because the application was changed without authority after the death of the applicant. *Ibid. ;* (3) Because Alexander & Mason acted as attorneys in the application without right or authority. *Hunt* v. *Rousmanier,* 8 Wheat. 174 to 232 ; (4) Because acting as attorneys for a dead man is a manifest absurdity. *Ibid.* p. 203 ; (5) Because it does not change matters by reason of the fact that Alexander & Mason signed their own names instead of Boyle's to the amendment, as their act, however signed, must be the act of the principal, and having no principal, the act was void. *Ibid.* p. 204 ; (6) Because a changed or varied specification cannot be related back to the original specification. *Railroad Co.* v. *Sayles,* 97 U. S. 554, 563 ; (7) An application file is a public record which every one is bound to know. *Loom Co.* v. *Higgins,* 105 U. S. 580, 594 ; (8) Because the appellant is as much bound by the record as

the appellees are, and both parties are presumed to have
acted with full knowledge that they were dealing with or
operating under a void patent; (9) Because equity does not
relieve against mistake of law except in cases where some
legal right is ignorantly surrendered, which rule cannot apply
here, as the statute provides a remedy and clearly points out
the manner of procedure; (10) Because all rights to a patent
are purely statutory, and no common law rights attach until
the patent itself is actually issued.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered
the opinion of the court:

The grant was to "James Boyle, his heirs or assigns," and
in this followed the language of section 4884 of the Revised
Statutes. But although Boyle made the application, he was
dead at the time the patent issued, and it was therefore held
by the Circuit Court that the patent was utterly void for
want of a grantee.

The reasoning of the court was that all the rights and
remedies of inventors to the exclusive property in their inven-
tions come from the statute, and that under sections 4886,
4895 and 4896 only three classes of persons are recognized to
whom a patent for an invention can issue, namely: The in-
ventor himself; the assignee of the inventor, when the assign-
ment is made before the issue of the patent; and the executor
or administrator of the inventor if he dies before the patent is
granted; that a patent for an invention is a grant for the
exclusive privilege of making, using and vending, and authoriz-
ing others to make, use and vend, an invention; and that just as
the term was originally used in England, to describe written
instruments emanating from the King, sealed with the great
seal, whereby lands, honors or franchises were conferred upon
individuals, so it is used in this country as descriptive of an
instrument whereby some exclusive right is granted by the
sovereign power to the person named therein. Hence, con-
tinued the court, a patent for an invention is a grant and must
have a grantor and a grantee. It must grant the franchise

or monopoly to a person named and who is capable of taking, and in this respect a patent does not differ from a patent or deed for lands. And as a deed to a person not then living and his heirs would be void, since, the word heirs being one of limitation and not of purchase, there is no person to take under it, so a patent for an invention to a dead man is wholly inoperative, and such must be the construction of a patent issued under section 4884 to the patentee, his heirs or assigns, when the patentee thus named is dead at the date of the grant.

The conclusion reached rests upon the assumption that the form of grant specified in section 4884 can only be pursued when the inventor is living, and that the intention of Congress was that the personal representatives of the inventor could not be treated as grantees under that section.

We are to remember that it is to be assumed that James Boyle had made a useful invention and taken all the necessary steps to secure the benefits to be derived therefrom, and that in view of the policy of the government to encourage genius and promote the progress of the useful arts, by securing to the inventor a fair and reasonable remuneration, a liberal construction in favor of those who claim under him must be adopted in the solution of the principal question before us.

It is also to be observed that, under the practice of the Patent Office, a considerable time necessarily elapses after a patent for an invention is allowed before it actually issues; that the applicants often reside at a great distance; that the cases when an inventor dies between the date of the application and the allowance, and the allowance and the issue, must be of frequent occurrence; and that this may happen when neither the office nor the inventor's solicitors are aware of the death. The reflection is a natural one that Congress, which, in framing the provisions of the patent laws, must be presumed to have had these possible occurrences in mind, did not contemplate that all patents issued under such circumstances should be invalidated by the death of the inventor.

What, then, was the intention of Congress in providing for a grant to the " patentee, his heirs or assigns ?" Must it be

construed as merely a personal grant to the individual, or may his personal representatives be treated as grantees?

"The words 'heirs,' and 'heirs of his body,'" says Mr. Williams, "are quite inapplicable to personal estate; the heir, as heir, has nothing to do with the personal property of his ancestor. Such property has nothing hereditary in its nature, but simply belongs to its owner for the time being. Hence, a gift of personal property to A. simply, without more, is sufficient to vest in him the absolute interest. Whilst, under the very same words, he would acquire a life interest only in real estate, he will become absolutely entitled to personal property." Williams' Pers. Prop. 297.

The privileges granted by letters patent are plainly an instance of an incorporeal kind of personal property, which, as personalty, in the absence of context to the contrary, would go to the executor or administrator in trust for the next of kin. Williams' Executors, 817; Schouler's Executors, § 200; Williams' Pers. Prop. 271; *Patterson* v. *Kentucky*, 97 U. S. 501; *Millar* v. *Taylor*, 4 Burrow, 2303; *Shaw Relief Valve Co.* v. *New Bedford*, 19 Fed. Rep. 753.

The rule in *Shelley's Case* was that when an estate of freehold is limited to a person for life, and the same instrument contains a limitation either mediate or immediate to his heirs or the heirs of his body, the word heirs is a word of limitation, and the grantee takes the whole estate either in fee tail or fee simple. This is a rule of law, and not a rule of construction. *Evans* v. *Evans*, [1892], 2 Ch. 173, 184, 188. It applies to nothing but real estate, and if resorted to in connection with personal estate, it is only by way of analogy, and as a rule of construction in order to promote the intention.

We do not perceive any sound reason for holding that the word "heirs" in a patent for an invention should be regarded as a definition of the extent of the patentee's own interest in the patent. There is nothing technical in the word as used. It indicates persons who are to have the benefit in the event of death, but the absolute character of the interest of the patentee is not attributable to it. The words in the statute, "the patentee, his heirs or assigns," whether construed accord-

ing to the rules of grammar, or to the evident intent of Congress, mean "the patentee or his heirs or assigns." They comprehend the legal representatives, assignees in law and assignees in fact, and the phraseology raises no limitation in the sense of the strict common-law rule applied to realty.

It is said that if the word "heirs" were not used in the grant, the patent would end with the life of the patentee, and would have no descendible or inheritable quality, but we are not persuaded that this would be so, any more than that the omission of the word from any transfer of personal property would have that effect. The exercise of the right vested is not in its nature dependent upon the continued existence of the person whose merit earned the reward. The statute has long been that "the patentee" may obtain an extension in certain cases, without adding that his executors or administrators may do this, (Act 1836, 5 Stat. 117, 124, c. 357, § 18; Act 1870, 16 Stat. 198, 208, c. 230, § 63; Rev. Stat. § 4924;) yet it was decided that an executor or administrator can obtain an extension, *Wilson* v. *Rousseau,* 4 How. 646; and that the extended term is assignable, although not expressly so provided. *Nicolson Pavement Co.* v. *Jenkins,* 14 Wall. 452; *Railroad Co.* v. *Trimble,* 10 Wall. 367. And so, that a patent issued to an inventor after an assignment of his entire interest has been entered of record, immediately and by operation of law enures to the benefit of his assignee. *Gayler* v. *Wilder,* 10 How. 477.

If the patent had issued to Boyle when living, although an assignment of his entire interest had been recorded before, the patent would have enured to the benefit of the assignee, and it is difficult to see why, if Boyle died prior to the issue of the patent and after he had made the application and assigned his interest, the assignee should lose the benefit of the assignment because of the death.

Under section 4896, when the inventor dies before the patent is granted, the right of applying for and obtaining the patent devolves upon his executor or administrator in trust for his heirs at law or legatees, and doubt has been suggested as to the applicability of the section when the death transpires

after the application has been filed, but the rulings and practice of the Patent Office are to the effect that in the latter contingency no new application need be made or new fee be paid, but the executor or administrator may file his letters and the case be disposed of as if the applicant had not died. *Rice* v. *Burt*, Dec. Com. Pat. 1879, p. 291; *Ex parte Smith*, Dec. Com. Pat. 1888, p. 24.

Neither this section nor section 4895, providing that patents may be granted and issued, or reissued, to the assignee of the inventor or discoverer, prescribe any form of grant, which is alone to be found in section 4884. The statute does not require the patent to issue under section 4896 to the executor or administrator, and inasmuch as a patent is personal property, and as such goes to the executor or administrator, in trust for the next of kin, it would appear that this result would follow where the grant is to the patentee, his heirs or assigns.

Sections 4895 and 4896 cover cases where the application is made by the legal representatives or assignees, but where the application is made by the inventor, and he dies, a grant in the terms stated apparently accomplishes all the objects aimed at by both these sections.

Section 1 of the act of 1790 provided for a grant to "the petitioner or petitioners, his, her or their heirs, administrators or assigns," (1 Stat. 109, 110,) and the act of February 21, 1793, was in the same language. (1 Stat. 318, 321.) Section 5 of the act of 1836 read that the patent should " in its terms grant to the applicant or applicants, his or their heirs, administrators, executors, or assigns," etc. (5 Stat. 117, 119.) The statute of 1870 required the patent to contain " a grant to the patentee, his heirs or assigns," (16 Stat. 198, 201,) which is carried forward into section 4884 of the Revised Statutes.

As remarked by Judge Lowell in *Shaw Relief Valve Co.* v. *New Bedford, ubi supra,* the omission of the word " executors" prior to 1836 did not affect the title of the executors, nor did the omission of " administrators and executors" from the act of 1870 make any difference. ".The law was not changed by it." Taking the sections together, the legislative intent seems to have been that a grant to the patentee, his

heirs or assigns, should vest title in the executor or administrator where the death occurred pending the application. If there be no executor or administrator, or letters of such are not recorded, still the general form of grant prescribed in section 4884 is applicable, and the patent may run to "the patentee, his heirs or assigns." The statute does not make it imperative that the patent shall issue in the name of the executor or administrator, the grant under section 4884 being sufficient to vest title in the patentee's legal representative, whether he be administrator, executor or assignee. If there are adverse claims of heirs and legatees, they may be left to be determined by the courts in whose jurisdiction they arise, rather than by the Patent Office. It is enough if it is found that the patent is proper to be granted, and it is so granted to the personal representatives of the deceased.

Sections 4895 and 4896 designate who should make the oath in case of death or assignment, but where the application has been made in the lifetime of the inventor, and remains in effect unchanged, there is no necessity for a new application or oath, except, of course, in the case of a reissue; and, as we have seen, a grant to the patentee, his heirs or assigns, sufficiently designates in whom the title to the patent shall vest in case of assignment or death.

In view of these considerations, as the language of the statute admits of a construction which, in sustaining the grant, effectuates the settled policy of the government in favor of inventors, our judgment is that that construction should be adopted, and that the statute should be read in the alternative, and the grant be treated as made to the patentee or his heirs or assigns. This conclusion is supported by the practice advisedly adopted in the Land Office, (another branch of the Executive department known as that of the Interior,) of using disjunctive terms for the purpose of preventing the defeat of grants by the death of the original grantee. In *Hogan* v. *Page*, 2 Wall. 605, 607, the court, speaking through Mr. Justice Nelson, said:

"A difficulty had occurred at the Land Office, at an early day, in respect to the form of patent certificates and of

patents, arising out of applications to have them issued in the name of the assignee, or present claimant, thereby imposing, upon the office the burden of inquiring into the derivative title presented by the applicant. This difficulty, also, existed in respect to the boards of commissioners under the acts of Congress for the settlement of French and Spanish claims. The result seems to have been, after consulting the Attorney General, that the Commissioner of the Land Office recommended a formula that has since been very generally observed, namely, the issuing of the patent certificate, and even the patent, to the original grantee, or *his legal representatives*, and the same has been adopted by the several boards of commissioners. This formula, ' or his legal representatives,' embraces representatives of the original grantee in the land, by contract, such as assignees or grantees, as well as by operation of law, and leaves the question open to inquiry in a court of justice as to the party to whom the certificate, patent or confirmation should enure."

And see *Carpenter* v. *Rannels*, 19 Wall. 138; *Bowman* v. *Long*, 89 Illinois, 19; *Warnecke* v. *Lembca*, 71 Illinois, 91; *Read* v. *Kearsley*, 14 Michigan, 215, 225; *Grand Gulf Railroad* v. *Bryan*, 8 Sm. & Marsh. 234.

The action spoken of by Mr. Justice Nelson was evidently taken in order to prevent hardships occurring under the old form of land grants, as indicated in *Galloway* v. *Finley*, 12 Pet. 264, and other cases; but no such action was considered necessary in reference to invention patents, although the same reason might have existed if the same form had originally been prescribed.

It appears from the certificate that James Boyle died on November 27, 1875, and that the application was thereafter prosecuted by the attorneys who had been previously appointed by him for that purpose, under the direction of Thomas L. Rankin, who had been appointed temporary administrator of Boyle's estate, March 9, 1876, and who obtained the patent and paid all the Patent Office and solicitors' fees therefor. It is also stated that prior to Boyle's application he had made a contract with Rankin, by which it was agreed

that the latter should advance the money to apply for and obtain the patent, and Boyle should assign to Rankin a one-half interest in the invention and patent; and that on December 2, 1875, Rankin made an agreement with Theresa Boyle, the widow of James Boyle, " then acting as executrix *de son tort*," by virtue of which Rankin was to acquire the right to the whole patent. Under the statutes of Texas a temporary administrator possesses the rights and powers of a general administrator so far as expressly confided to him by the order of appointment. 1 Sayles' Tex. Civ. Stat. 584.

The failure to record the title papers in the Patent Office, it appearing that the administrator and equitable owner in part obtained the patent, cannot, in the view we take of the case, make the patent void. The identity of the grantee might be determined by extrinsic testimony. If the grant be construed as made directly to the heirs, executors, administrators or assigns of Boyle, there can be no doubt as to its validity, even though when the patent issued it was not made to appear who they were.

The case of *Eagleton Manufacturing Co.* v. *West*, 111 U. S. 490, is cited to the proposition that, where the inventor dies, a patent is invalid when not issued upon the application and oath of his personal representative, but in that case the application was so amended after the inventor's death that it was equivalent to a new application, yet none such had been made, nor had the administratrix made the oath rendered necessary under such circumstances. In the case at bar the application remained in substance unchanged and no new application or oath was essential to jurisdiction.

We ought, perhaps, to add that in our opinion the patent would not be absolutely void, even if the objections taken by appellees were better founded than we hold they are. If the proceedings in the Patent Office may be considered as analogous to the condition of a pending suit at law upon the death of the plaintiff, the great weight of authority in this country is to the effect that where the court has acquired jurisdiction of the subject-matter and the person during the lifetime of a party, a judgment for or against a dead man is not wholly

void or open to collateral attack. It is very rarely that pro-
ceedings are wholly void and without force or effect as to all
persons and for all purposes, and therefore incapable of being
or being made otherwise; and we are entirely clear that this
patent cannot be treated as falling within that class.

The record shows, as we have said, the existence of a con-
tract between Rankin and Boyle, by which the latter was to
advance the money to apply for and obtain the patent for a
half interest, and that Rankin carried out the contract on his
part. The agreement between Rankin and the widow, then
acting as having a colorable right to administer, is also set
out, under which Mrs. Boyle agreed that as soon as she should
receive five thousand dollars in the way specified she would
"release any further interest in said patents to be obtained
and the machines then in use." Rankin was appointed tem-
porary administrator, March 9, 1876, and on July 18, 1876,
the temporary letters of administration issued to Rankin
"were superseded by the appointment of the said Theresa
Boyle as permanent administratrix. She thereafter filed an
inventory of her husband's estate, in which she included the
patent in question as held and owned jointly with Thomas L.
Rankin. Neither Theresa Boyle, nor her children, nor Thomas
L. Rankin ever repudiated the proceedings whereby said patent
was obtained, but enjoyed the beneficial ownership thereof,
and sold their interest therein for a valuable consideration."

When Mrs. Boyle took out the letters of administration,
her prior acts, presumably upon this record beneficial to the
estate and certainly not such as appellees have any right to
complain of, should be viewed in the same light as though
she had been made administratrix upon the death of her hus-
band. And upon the facts stated, without discussing the
particular nature of the instrument of December 2, 1875, we
conclude that Rankin acquired under the two contracts the
equitable title to the patent; and the circumstance that
there was no record evidence of the transaction in the Patent
Office made no difference, in the absence of question as to
the rights of third parties. The patent, therefore, enured to
his benefit. *Hartshorn* v. *Day*, 19 How. 211; *Day* v. *Union*

*India Rubber Co.,* 20 How. 216; *Gayler* v. *Wilder,* 10 How. 477.

Boyle made the oath to the application filed in his lifetime in accordance with section 4892 of the Revised Statutes, and the certificate states that after his death " the specification originally filed with said application for a patent was amended within the scope of the original oath and the invention described in said original specification, and by way of limitation of the claims, but without the filing of any new oath or power of attorney." In *Eagleton Manufacturing Co.* v. *West Manufacturing Co.,* 111 U. S. 490, 498, before referred to, the patent was held invalid because the authority given to Eagleton's attorneys ended at his death, and the patent was granted upon amendments made by the attorneys without any new oath by the administratrix. And Mr. Justice Blatchford, speaking for the court, said that the file wrapper showed, " beyond doubt, that there was no suggestion, in the specification signed and sworn to by Eagleton, of the invention described in the amendment," and that " in view of the entire change in the specification, as to the invention described, the patent, to be valid, should have been granted on an application made and sworn to by the administratrix. The specification, as issued, bears the signature of Eagleton and not of the administratrix, and it is sufficiently shown that the patent was granted on the application and oath of Eagleton, and for an invention which he never made."

In the case at bar, there was not only no amplification of the original application by the amendment, but it was within the scope of the original specification and a limitation and narrowing of the original claim, so that it was the identical invention sworn to by Boyle, and there was no more reason for requiring a new oath from his administratrix than there would have been for requiring it from Boyle himself. The attorneys who had acted for Boyle continued to act under Rankin's direction, and although it is not shown that their authority was conferred in writing by a power of attorney executed and filed in accordance with the rules of the office, that is not a fatal objection, since the attorneys had authority

in fact, and their acts were subsequently ratified by Rankin and by Mrs. Boyle.

We are of opinion that the grant was not void because of the death of Boyle before the patent was issued, and that it should be construed in the alternative as a grant to James Boyle, or his heirs, or assigns, which would include a grantee or grantees in being, capable of taking the patent and to whose benefit the grant would enure; that the patent should be construed as a grant to Thomas L. Rankin as assignee, and held to have been obtained by the authority of Mrs. Boyle as administratrix, as well as of Rankin; and that the amendment did not render the patent absolutely void, nor did the fact that no oath was filed after Boyle's death.

*These conclusions answer the questions propounded, and will be certified accordingly.*