## CLEVELAND GAS BURNER & APPLIANCE CO. v. AMERICAN HEATER CORPORATION.

### No. 8634.

Circuit Court of Appeals, Eighth Circuit.
Feb. 11, 1930.

Percy H. Moore, of Washington, D. C. (Rodney Bedell, of St. Louis, Mo., on the brief), for appellant.

Joseph J. Gravely, of St. Louis, Mo. (James A. Carr, of St. Louis, Mo., on the brief), for appellee.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and DEWEY, District Judge.

VAN VALKENBURGH, Circuit Judge.

Appellant, plaintiff below, sued appellee, defendant below, for patent infringement, praying for injunction, accounting, and damages. From a decree below dismissing its bill appellant brings this suit.

Appellant is the owner of letters patent No. 1,560,248, issued November 3, 1925, to Harry Kerr, for an improvement in gas burners, and more particularly in a burner of the type disclosed in letters patent theretofore issued to W. J. Barber, No. 1,267,355, in which two streams of gas are commingled and caused to burn without initial admixture with air. The object aimed at and the nature of the improvement are thus stated by the patentee in his specification:

"My present object is to provide an effective burner in which separate streams or jets of gas are brought into confluence at converging angles together with separate streams of air to promote perfect combustion under either low or high gas pressure conditions, to prevent back-firing under a low or fluctuating gas pressure, and to produce a spreading flame which may be readily controlled and efficiently applied in restricted or confined spaces. To attain my general object I provide a burner body having reversely-inclined burner nozzles which are particularly constructed to discharge attenuated streams or jets of gas into confluence with considerable force so as to spread the gas and produce an ovoidal body of flame, the nozzles being also particularly constructed to permit the gas streams to entrain just the right amount of air to maintain a sheath of flame around each jet or stream of gas under high-pressure operating conditions and also to promote a proper mixture of gas and air and a constant flame without back-firing under low-pressure conditions."

Figure 1, accompanying the application sufficiently illustrates the nature and scope of the invention.

Fig 1

The entire specification deals with converging streams of gas, brought into confluence by means of reversely inclined burner nozzles so disposed and constructed as to spread the gas and produce an ovoidal body of flame. This conception is carried consistently and exclusively through the first four or the six claims of the patent, of which claim two is typical:

"A gas burner for heating purposes adapted to produce perfect combustion equally with either natural or manufactured gas or such gases mixed, at either low or high gas pressures, and under fluctuating pressures, comprising a hollow burner body having screw-threaded openings therein extending upwardly toward each other at substantially right angles, and separate nozzles screwed into said openings having enlarged gas intakes terminating in short axial gas orifices and formed with side air intake openings in their base portions in substantially the same plane as the outlet end of the orifices adapted to bring separate streams of air and gas into confluence."

While Kerr's application was pending his solicitors received the following communication from the Examiner in the Patent Office who had his application under consideration:

"The following claims have been found allowable in a copending application, and have been suggested to applicant for interference purposes,

"1. A gas burner comprising an unobstructed commingler tube having a cross port forming an air inlet thereto and a gas jet aperture in the surface of said cross port aligned with said commingler tube, said air inlet port being restricted in area to retard the rate of flame propagation in the mixture whereby said tube will be swept free from all flame at mixture velocities obtainable with normal gas pressures.

"2. In a gas burner, a pair of opposed jet tubes in slightly offset relation, whereby the resulting flame extends at an oblique angle to said jets.

"If applicant desires to make the above claims he should do so within thirty days. Failure to do so will be considered as a disclaimer of invention of the subject matter thereof.

"The claims of this application are not considered patentable over the issue of the interference."

Thereupon, Kerr copied and incorporated the two claims suggested in this letter of the Patent Office, and an interference was declared with the copending application referred to—that of an inventor named Shuell—which was owned by the Ever Hot Heater Company of Detroit, Mich. The interference was decided in favor of Kerr by what is termed "a concession of priority" by Shuell. In return for this concession the defeated party in the interference was granted a license to make burners like those purporting to be covered by the patent in suit upon payment of the nominal sum of $50 per year. Thus the first of the two claims suggested in the letter of the patent office became claim 5 of the Kerr patent now before us, and this is the only claim involved in this litigation.

Appellee's structure contains no reversely inclined nozzles, but is a ring burner using a series of small Bunsen burner tubes which project the flame against a superimposed wall of metal, a mechanical obstruction, which acts as a baffle. Each nozzle operates independently of the others and is provided with a separate baffle member. A baffle in the art is some form of obstruction, mechanical or otherwise, which prevents the flame from extinguishing itself by being carried too far from the mouth of the burner tube. In the absence of something of this kind the flame will form at too great a distance from the tube or will be blown out entirely. In appellant's structure, as described in the specification, this baffle or check is produced by the arrangement of the reversely inclined nozzles, whereby the jet of one burner is projected against that of another. In appellee's device the nozzles are not so reversely inclined, and the baffle is produced by the mechanical obstruction referred to.

Appellee is charged with infringement of claim 5 of the patent in suit. That claim deals with a single tube, and contains no reference to a baffle of any sort. It describes a tube having a cross port forming an air inlet and a gas jet aperture in the surface of this cross port, the air inlet being restricted in area to retard the rate of flame propagation in the mixture whereby the tube will be swept free of all flame at mixture velocities obtainable with normal gas pressure. There is in this no new element nor combination of elements, not found commonly in the prior art, unless it be in the proposal to "retard the rate of flame propagation in the mixture whereby said tube will be swept free from all flame at mixture velocities obtainable with normal gas pressure." The burner described is a typical Bunsen burner which is thus defined:

"A gas burner invented by R. W. Bunsen, consisting essentially of a tube so arranged that air is drawn in through openings at the base, where it unites with the gas and produces an extremely hot, nonluminous flame." New Standard Dictionary.

So far as essential elements are, concerned, the claim in suit reads aptly upon a Bunsen burner. The latter is provided with openings at the base through which air is introduced to commingle with the gas at the point of entry; and the force with which air is admitted, its quantity, and thereby the rate of flame propagation, and the position of that flame with reference to the tube itself, are regulated in actual practice by movable sleeves or collars which operate as dampers to open or close the air inlet openings, in such degree as may be desired. The Bunsen burner in some form is met with frequently in the prior art. If modified by Kerr in such manner as to involve invention, neither specification nor claim discloses it. Upon this point the following from the cross-examination of patentee Kerr is pertinent:

"XQ. Where, in the patent, do you find anything stating that you need an air inlet here (indicating) of .1160 inches, or that your gas orifices are a certain size, or that the tube is of a certain length? A. Well, that is the fine art in the invention. That is what makes it; those dimensions make the device an invention, something in the art, something that the other fellow was unable to do, and it is the fine dimensions and their relations to one another that make the jet possible and make it an invention.

"XQ. That is my question, exactly. Where, in the patent, specifically, do you find those things that make the burner work? A. The dimension—well, there are no dimensions, small dimensions given, any more than there is in any of your citations or references, as far as that is concerned. * * * I admit we have fine dimensions in all my diameters in the invention.

"XQ. Now, my question is, where in the specifications, do you find those fine dimensions? A. We do not have them; we do not have them in there.

"XQ. In other words, then in order to make this good burner, like these, with these Barber dimensions, you have got to experiment, you have got to find out all about your gas, and build your actual burner accordingly, is that right? A. We build a jet for each kind of gas, the same combination; we can build one jet for artifical gas, we will say, that will work all over this country, for one

capacity. If we want the other, for larger capacities, we build another jet. The difference between our burner for one capacity and another burner for another capacity, would be that, if we increase the capacity, then changes must be made in the corresponding air port and commingling tube holes. If I want to increase the capacity of our exhibit jet I would first put in a larger gas orifice and a larger air port, and smaller commingling tube. As to whereabouts in the patent do I find the instructions as to how to make those changes, why, unfortunately, the attorney filing the application did not put them in."

■ It is claimed that the patented arrangement produces a proper freedom from backfiring under a sliding scale of normal gas pressure. It is shown in evidence, however, that a different construction is necessary for different pressures, more particularly because of the distinction between natural and artifical gas. There is nothing in the patent which gives definite instruction as to how a fixed and dependable result can be secured. Given all the old elements, operating in combination in their ordinary manner, as we find them, and the result aimed at can be attained only by a series of experiments in any given case; but such mere experimentation, or mechanical ingenuity, has never been accepted as invention, unless, at least, it has resulted not only in a new and useful result, but also either in a process or a machine that operates in a definite manner in accordance with a formula disclosed by the patent.

There is no description of this specific structure in the specification, and claim 5 contains no description of the invention adequate to render it useful and to disclose a practical invention. The patent fails to satisfy the requirements of section 4888, Rev. St. (35 USCA § 33), which provides that the application shall contain a written description of the manner and process of making and using the invention "in such full, clear, concise and exact" terms as to enable any person skilled in the art to make and construct it. Beidler v. United States, 253 U. S. 447, 40 S. Ct. 564, 64 L. Ed. 1006; Stewart v. American Lava Co., 215 U. S. 161, 30 S. Ct. 46, 49, 54 L. Ed. 139.

As said by the Supreme Court in the case last cited "the public are told little more than to try experiments until they find a burner that works." In fact, the argument of counsel for appellant practically resolved itself into a claim of having secured a some-

what intangible superior result. In the brief for appellant counsel say that the location of the gas orifice in the surface of the cross port is important, and that there is novelty in the relative location of air port and gas orifice. As a matter of fact in actual construction of both devices the gas orifice is not in the same plane as the cross port, or air inlets, and this feature was not covered by the patent. Counsel for appellant say:

"The feature of providing a slight depression in the surface of the cross port, while incidental to the making of the tubes on automatic machines, was found to be quite important. Although this depression is not mentioned in the patent, this feature was copied by defendant and goes to emphasize the necessity of having a cross port as distinguished from an air inlet."

Upon this point the trial court, in its opinion,[1] made this pertinent comment:

"But it is claimed that this patent presents a jet different from the ordinary burner in that the gas enters at the lower surface of the air port. A great number of burners have been introduced in evidence, and for present purpose it is not necessary that each, or any, of them be described. It will suffice to say that several of these burners, long in use and well known in the gas burner trade, disclose the same arrangement of the tube, the gas opening, and the air inlets, that are shown in plaintiff's patent. A large number of prior patents were introduced in evidence. Nearly all of these patents disclose the same general arrangement of the parts that is to be found in the patent in suit. The Shaffer patents, Nos. 617,942 and 618,239, reveal the gas entering the jet at the lower level of the air opening in identically the same manner as that disclosed in Claim 5. The same thing is to be found in other of the patents in evidence. So that we find nothing new in plaintiff's arrangement in that respect. Moreover, there appears from the evidence to be no utility to this particular arrangement of the gas and air inlets. The weight of the evidence indicates that there is no importance of value in the fact, the entrance of the gas is at the bottom of the air current. The gas inlet might as well be below the level of the air inlet. The gas inlet appears in the art at all these various positions with reference to the air inlet. In fact, plaintiff's witness testified that in the making of their jet it was difficult to make the gas inlet at exactly the lower level of the air inlet, and that it

seemed that the entrance of the gas at a point slightly below the level of the air inlet added something to the efficiency of the burner."

Furthermore, we are strongly of opinion that claim 5, as taken bodily from the copending application, is an interloper in this patent, and finds no suggestion or support in the specification. It is like the cowbird's egg deposited in the nest of another bird. It simply "does not belong." Counsel for appellee earnestly insist that the claim in suit constitutes a departure from the invention originally claimed, is not covered by the oath of the inventor, and is, therefore, void. They say:

"Kerr's original application and his oath of inventorship were limited to a combination of jet burners having very definite relations to each other; and Kerr's original application and his original oath did not purport to deal with an individual burner jet; and this original defect was never cured by any subsequent oath on the part of Kerr."

[2] Rev. St. § 4892 (35 USCA § 35) requires that an application for patent must be accompanied by the oath of the applicant. In case of amendment, either in the specification or claims, the question always is whether the matter presented by the amendment is new matter or merely a legitimate amplification of that contained in the application as originally verified and filed.

"An applicant for a patent may properly file new claims in the Patent Office without verification, where they are within the invention as disclosed in the specification and drawings, and narrower than the original claims." General Electric Co. v. Morgan-Gardner Electric Co. (C. C. A. 7) 168 F. 52, 53.

The converse is thus stated by Judge Day in Ney Manufacturing Co. v. Swineford Co. (D. C.) 211 F. 469:

"An amendment of a patent application introducing a claim not contained in the original application and embodying a construction not specified nor claimed therein must be verified by the supplementary oath of the applicant in the terms prescribed by Rev. St. § 4892."

A wealth of decision supports these statements of the rule: Mine & Smelter Co. v. Braeckel Concentrator Co. (D. C.) 197 F. 897; John R. Williams v. Miller, Du Brul & Peters Mfg. Co. (C. C.) 107 F. 290; Chicago & N. W. R. Co. v. Sayles, 97 U. S. 554, 24 L. Ed. 1053; Eagleton Mfg. Co. v. West, etc., Mfg. Co., 111 U. S. 490, 4 S.

Ct. 593, 28 L. Ed. 493; Kennedy v. Hazelton, 128 U. S. 667, 672, 9 S. Ct. 202, 32 L. Ed. 576; De La Vergne Machine Co. v. Featherstone, 147 U. S. 209, 13 S. Ct. 283, 37 L. Ed. 138; Hobbs v. Beach, 180 U. S. 383, 394, 21 S. Ct. 409, 45 L. Ed. 586; Stewart v. American Lava Co., 215 U. S. 161, 30 S. Ct. 46, 54 L. Ed. 139.

In our opinion claim 5 of letters patent No. 1,560,248 is invalid for the following reasons:

1. Because the structure therein described is nothing more nor less than a Bunsen burner tube adapted by experimentation to this specific use, and is therefore anticipated by numerous patents in the prior art.

2. Because the claim is too indefinite and uncertain in its description of the manner and process of making and using the alleged invention to enable any person skilled in the art to make and use it.

3. Because, as urged, the claim constitutes a departure from the invention originally specified, illustrated, and claimed, and is not covered by the oath of the inventor.

We concur in the action of the trial court in dismissing the bill, and the decree accordingly is affirmed.