**TODD**

v.

**SEARS ROEBUCK & CO.**

Civ. No. 791.

United States District Court,
W. D. North Carolina,
Charlotte Division.

Feb. 19, 1954.

Eaton & Bell, Charlotte, N. C., for plaintiff.

Stephen H. Philbin, New York City, Nathan N. Kraus, Chicago, Ill., Frank H. Kennedy, Charlotte, N. C., for defendant.

WARLICK, District Judge.

This is a patent case and the action is one for an alleged infringement. The plaintiff, a resident of Mecklenburg County in the Western District of North Carolina is the owner of the patent which is numbered 2,126,357 and given the name of "Tractor Hitch". It issued to the plaintiff on August 9, 1938 on his application filed with the Patent Office on May 11, 1937. It embodies two claims and both are alleged to be infringed by the defendant in the manufacture and sale of its two-wheel garden tractors, known as and sold under the name of the "David Bradley" tractor.

The defendant is a corporation chartered under the laws of the state of New York and has and maintains a regular and established place of business at Charlotte in this district.

The claims of the patent, herein called the "Todd patent" are:

"1. The combination with a tractor of the sulky type, of a hitching device comprising a draw bar, means for pivotally connecting the draw bar to the tractor frame at a point substantially one-half of the distance between the front end of the tractor frame and axles of the tractor, and means for restricting vertical movement of the rear end of the draw bar.

"2. The combination with a tractor of the sulky type, of a hitching device comprising a draw bar, means for pivotally connecting the forward end of the draw bar to the tractor at a point substantially one-half of the distance between the front end of the tractor frame and axles of the tractor, and spaced horizontal guide bars between which the draw bar is mounted, whereby vertical movement of the rear end of the draw bar is restricted."

It is to be noted that the one difference between the two claims, as the wording appears somewhat similar, is that claim One sets out "Means restricting vertical movement of the rear end of the draw bar" and claim Two generally sets out "a particular kind of such means in the nature of spaced horizontal guide bars between which the draw bar is mounted, whereby vertical movement of the rear end of the draw bar is restricted."

The defenses interposed in the answer are:

(1) The claims are invalid, because of lack of patentable invention over the prior art.

(2) The claims are invalid, because "substantially" is vague and indefinite.

(3) The claims are invalid, because there is no written description of their subject matter.

(4) The claims are invalid, because Todd did not swear that he invented them.

(5) The claims are not infringed.

The patent office history of the Todd patent will throw a considerable amount of light upon the investigation being made to determine the responsive answers that should be given. When the application was first filed and its description set out, it had nine claims and was verified by the applicant, Garry W. Todd, on the 29th of April, 1937, and was accompanied by the two drawings attached to the file wrapper proper; all of the claims were rejected by the Patent Office on June 22, 1937, with the exception of claim No. 4, on the grounds that none of the claims were patentable over certain patents heretofore granted.

Since the gist of this particular action is the point "substantially one-half of the distance between the front end of the tractor frame and axles of the tractor," it would be of interest to note since that identic claim in each of the two claims allowed was not set out originally or any part thereof. A reference to the file wrapper will indicate that

Claim No. 1 said, "a point between the front end of the tractor and the axle thereof,"

Claims 2, 5, 6, and 7 did not specify any location.

Claims 3 and 4 were for "a point near the front of the tractor".

Claim No. 8 claimed "a point above the axle of the tractor and in advance of the axle".

Claim No. 9 "a point in advance of the pivot point of the tractor"

and that all of the claims were rejected by the examiners.

Claims 1, 2, 5, and 6 were rejected as "being obviously completely anticipated by Galardi." and further

Claims 1, 5 and 6 were rejected "as being purely functional."

The Patent Office additionally rejected claims 1, 3, 5 and 8 "as lacking invention over Wilson and Galardi."

Claims 4 and 7 were rejected "as being mis-descriptive" and lacking in invention over Galardi and DeRouet.

Claim No. 9 as being "entirely vague and mis-descriptive."

Then it was on October 29, 1937, that counsel representing plaintiff forwarded to the Patent Office a letter in answer to one received under date of June 22, 1937, suggesting that all claims be cancelled excluding Claim No. 9 and that Claims 10, 11, and 12, as will be found in the file wrapper, were forwarded and added to the claims of patent. Then it was that on January 27, 1938, plaintiff was informed by way of letter to his counsel, that Claim 9 is again rejected and that Claims 10, 11 and 12 are further rejected "as lacking invention over the Patent of Wilson in view of De-Rouet."

Claim No. 10 specifies the location of the tractor hitch "In advance of the axle near the front end of the tractor."

Claim No. 11 "at the front end of the tractor in advance of the axle."

Claim No. 12, "at the front end of the tractor."

On February 25, 1938, counsel for plaintiff once again communicated with the Commissioner of Patents and submitted additional claims numbered as 13 and 14, in the following words: (1) "The combination with a tractor of the sulky type, of a hitching device comprising a draw bar, means for pivotally connecting the draw bar to the tractor frame at a point spaced from the front end of the tractor frame and slightly in advance of the axle of the tractor, and means for restricting vertical movement of the rear end of the draw bar," and

(2) "The combination with a tractor of the sulky type, of a hitching device comprising a draw bar, means for pivotally connecting the forward end of the draw bar to the tractor at a point intermediate the distance between the front end of the tractor frame and axle of the

tractor, and spaced horizontal guide bars between which the draw bar is mounted whereby vertical movement of the rear end of the draw bar is restricted."

On May 5, 1938 these claims were rejected "as lacking invention over the patent of Wilson in view of DeRouet" and then it was that plaintiff's attorney amended Claims 13 and 14 by numbering them 1 and 2, with pen, and inserting in line 4 after the word "point" the following, "substantially one-half of the distance between" after inking out the word "spaced" in line 4, and the word "from" in line 5, and the words "slightly in advance of the" in lines 5 and 6, and inserting in Claim No. 2, the following: After the word "point" in line 4, "substantially one half of" and inking out the word "intermediate" in line 4.

On this amended wording being submitted the examiner allowed Claims 1 and 2. This was done in the absence of plaintiff, by his attorney, and the claims now relied on were not verified. Thereupon the patent was granted.

The Todd patent as described does not purport to be drawn to scale. Its proportions are not given and its dimensions and sizes are not set out. The tractor model offered in the trial was somewhat crude in appearance and did not have that finesse that a factory made object would indicate. I learned that it had not been placed in production and that actually none have been made and sold. It however, contained all of the elements of the claims made for it. A motor, gas tank, transmission, and other factors necessary for actual operation had been added, which gave to it the appearance of a farm tractor, with the patent factors a part thereof.

Defendant's tractor presents an entirely different appearance. It shows good proportions, etc., and it and the appliances made to be used with it have been generously received by the buying public,—a half million of them having been sold by the defendant company. It is so constructed that its frame extends 20⅛ inches to the front of the axles with a hitch point 11⅞ inches in front of the axles which is 59% of the distance from the axles to the front of the tractor frame. It has a single guide bar and has a "U" shaped member attached to the frame. There are two sets of rollers each, one set rolling upon the top and the other set rolling on the bottom of the guide bar. The draw bar is attached to the assembly carrying the rollers and the draw bar is below the axles, contrary to that in the Todd patent, where they are above or over the axles. These parts in no wise resemble those embraced in the Todd patent and are as dissimilar as objects can ordinarily be. Calculated to serve the same end, they likely meet that requirement but indicate an entirely different conception in manufacture. These members are constructed so that a number of appliances can be attached, some in front, others to the rear of the tractor,—plows, cultivators, cutter bar mowers, snow plows, and lawn mowers.

I observed these tractors very carefully on any number of occasions during the time that the trial was in progress. There is little, if any similarity in their general appearance, or in any part that goes to make up the tractor proper.

■ I conclude as a matter of law that the Todd patent, 2,126,357, is not valid, in that it lacks invention as it falls far short in reaching that high standard set up by the courts for inventive genius, and which constitute patentable invention. The Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162.

I conclude that the "half way distance" would not and could not be patentable because it represents nothing more than a mere matter of degrees, which in turn are made dependent on many contributing factors.

■ The Todd patent fails in every way to define the word "substantially" and offers no radius from which it could be ascertained. The word substantially has a direct meaning in the English language and it is not necessarily synony-

42

mous with essentially. Webster defines it as *strongly, for the most part, essentially.* It is a relative word, which, while it must be used with care and discrimination, must nevertheless be given effect, and in a claim of a patent allowed considerable latitude of meaning, where it is applied to such subjects as thickness, as by requiring two parts of a device to be of substantially the same thickness, and cannot be held to require them to be of exactly the same thickness. Valvona-Marchiony Co. v. Marchiony, D.C.N.J., 207 F. 380, 384; Vol. 40 Words and Phrases, Substantially. The absence of a more definite statement of the position tends to leave one uncertain as to where the hitch should be placed on the draw bar of a tractor, and conveys the impression of being vague and indefinite. Surely 59% could hardly be looked upon as substantially one half of the distance between two points.

In my findings of fact I purposely set out the many steps in the progress of the application before the patent office, for that I felt that a failure on the part of the plaintiff to verify that which actually constituted the patent in this case was a lack of compliance with the statute. 35 U.S.C. § 35; R.S. 4892. The oath is an essential pre-requisite to the exercise of jurisdiction by the commissioner. Scott & Williams v. Whisnant, D.C., 43 F.Supp. 332; Westinghouse Electric & Mfg. Co. v. Metropolitan Electric Mfg. Co., 2 Cir., 290 F. 661; Simpson v. Newport News Shipbuilding & Dry Dock Co., D.C., 18 F.2d 318.

The claims under investigation as the file wrapper will show, were not submitted when the application was originally filed and when the verification was had. Five claims were submitted following the verification and the two finally allowed were so wholly different from those originally claimed, that I must conclude that the patent office obtained no jurisdiction in the absence of the verification, to grant the claimed patent.

It is well settled that unverified claims for an invention other than that originally described cannot be allowed. Steward v. American Lava Co., 215 U.S. 161, 30 S.Ct. 46, 54 L.Ed. 139. But this disability does not extend to a new claim whose substantial features were a part of the invention which was described in the specifications which were sworn to, De La Vergne Refrigerating Mach. Co. v. Featherstone, 147 U.S. 209, 13 S.Ct. 283, 37 L.Ed. 138; Schick Dry Shaver v. R. H. Macy & Co., 2 Cir., 111 F.2d 1018.

The factors contained in the two claims allowed vary so substantially from those contained in the claims originally filed that a new verification would be necessary to meet that required by the statute.

I further conclude that the article manufactured and sold by the defendant does not infringe the patent granted to the plaintiff.

Counsel will submit judgment.