AMERICAN LAVA CO. et al. v. STEWARD et al.

(Circuit Court of Appeals, Sixth Circuit. July 24, 1907.)

No. 1,642.

1. PATENTS—VALIDITY—SUFFICIENCY OF DESCRIPTION.
Where the essence of an invention is the location, form, size, or any other characteristic of the means employed, the patentee must distinctly specify the peculiarities in which his invention is to be found.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, §§ 133–143.]

2. SAME—AMENDMENT OF APPLICATION.
An amendment to an application for a patent made to introduce a new theory of the invention, and which contains new claims covering a process based on such theory, neither of which were mentioned in the original application, if permissible as within the invention, should be verified by the oath of the inventor.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 152.

Amendment of application, see note to Cleveland Foundry Co. v. Detroit Vapor Stove Co., 68 C. C. A. 239.]

3. SAME—MECHANICAL AND PROCESS CLAIMS.
While it is competent, when the circumstances permit it, for an inventor in describing a machine or apparatus which he has devised to make a claim for a process which his patented device is capable of carrying out, to entitle him to do so, the process must be one capable of being carried out by other means, otherwise the claim is merely for a function of the machine; and, unless such other means are known or are within the reach of ordinary skill or judgment, the patentee is bound to point them out.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 141.]

4. SAME—ANTICIPATION—ACETYLENE GAS BURNERS.
The Dolan patent, No. 589,342, for an acetylene gas burner, and the process embodied therein, claims 1, 2, and 3 are void (1) for anticipation, especially by the French patent to Bullier of April 20, 1895; and, additions thereto (2), for indefiniteness of description; and (3) because they were new claims based on a new theory of the principle of the invention added by an amendment to the application made in the Patent Office which was not verified.

Appeal from the Circuit Court of the United States for the Eastern District of Tennessee.

Charles Neave, for appellants.
Louis C. Reagener, for appellees.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. This appeal brings before us the questions of the validity and of the infringement of letters patent No. 589,-342, granted to E. J. Dolan August 31, 1897, for improvements in

tips for acetylene gas burners, on an application filed February 18, 1897, which patent the complainants, the appellees here, claim to own by assignment. The claims of the patent here involved are those numbered 1, 2, and 3. There are two others, numbered 4 and 5. The first and second claims are for the process of "burning acetylene gas." The third is for the apparatus employed. The defenses were that these claims were invalid because of anticipation of the invention, and that the defendant did not infringe. The court below, while admitting the case to be "close," decreed in favor of the complainants. The doubt seems to have been upon the validity of the patent in respect to the claims involved. The appellant rests its contention that the claims are invalid upon several grounds. It will be convenient to consider first the third claim, which is for the burner, and then the other two, which relate to the process. In the specification the patentee, reciting that a difficulty had been experienced in burning acetylene and other gases rich in carbon from the accumulation of deposits at the orifice of the burner whereby the passage was clogged and the flame distorted, proceeds to state that he proposes the use of two independent gas jets, mounted and inclined toward each other, so that the jets of gas with the air which has been drawn into the gas tubes through openings in the sides thereof, by the swift upward movement of the gas, shall be made to clash together at the point of combustion, and produce a broad, flat flame. The structure of the members of the burner which he proposes to use so mounted and inclined can be best explained by reproducing figure 1, which is a central longitudinal section thereof and figure 2, which is a modification.

A is the body of the "tip," or burner, secured to the gaspipe, B. C is a constriction of the passageway for the gas leading from the chamber, D, into the chamber, E, at the upper end of which is the ex-

tremity of the tip. This constriction, C, is located at or near the longitudinal center of the burner. The letters, a a, represent inclined air ducts leading from the open into the gas chamber, E. We shall have occasion to refer to some further particulars of the specifications later on. Of this construction he says:

"The operation of this device seems to be that the gas under pressure escaping in a cylindrical jet through the opening, C, draws in on all sides an envelope of air through the opening, a. This is due to the fact that the chamber, E, is larger than the outlet, C, and to the fact that the air inlets, a a, substantially surround the issuing gas-jet. The result of this arrangement seems to be to so cool the outside of the flame as to prevent any deposit of carbon at the point of egress."

The third claim is this:

"3. The combination in an acetylene-burner of the block, A, having the minute opening, C, the cylindrical opening, E, opening without obstruction to the atmosphere, and the air-passages a, substantially as described."

The grounds on which it is insisted that the patent is void in respect of this claim are, first, that it was anticipated by prior patents; second, that the description is too indefinite to distinguish it from the prior art; and, third, that the specifications were altered in essential particulars by amendment while the application was pending in the office, so as to bring in entirely new matter which is now relied on, and that the new matter was not verified by the oath of the applicant. We think that these objections are well taken. In respect to the first, the proof makes it clear that for some time prior to Dolan's supposed invention several acetylene gas burners had been invented and patented, some in this country, and some abroad, which contained the substance of all that Dolan described in his patent. By this we do not mean to say that the theory which he puts forward in respect to the mode of operation of the means he suggests had been definitely stated, but that burners had been devised and patented which embodied the means described by him, and that they were adapted to accomplish the same result. The French patent to Bullier of April 20, 1895, and his first and second certificates of addition, dated June 29, 1895, and June 12, 1896, respectively, furnish the most complete anticipation; but, before referring to the invention there disclosed, we will notice some other patents, to find what ideas and forms had been suggested by them for the construction of gas burners. A common and well-known type of such burners was the Bunsen burner, which consisted of a cylindrical chamber into which the gas was pressed through a small aperture at the bottom in a fine jet. Small openings were made in the sides of the cylinder through which air was drawn by the upward rush of the gas through the cylinder to supply the oxygen required for combustion. The theory of this operation was that the gas and air were commingled before reaching the place of combustion at the upper end of the chamber. Duplex burners—that is, burners in which two streams of gas and air combined are made to impinge upon one another at the place of combustion— were also old. In a French patent granted to M. Letang in 1896, for

a burner of acetylene gas for lighting, the inventor states his purpose to provide means for preventing the heating of the outlet and its clogging by deposits resulting therefrom. One of the means by which he proposed to do this was to cool the gas outlets by means of a current of air introduced through a circular slot in the chamber above the constricted tube from which the gas jet ascends to the upper orifice. Dolan says he does this to "cool the outside of the flame." Letang, with apparently more correctness, says he thereby "cools the gas outlet opening." We pause here to note that if the tendency of the circular column of gas when drawing in air upon its surface is to encircle itself in an envelope of air, and that they pass out of the burner in that relation, as is contended in behalf of the Dolan patent, it would seem as though Letang's device was adapted to perform that function. If his chamber was long, the columns of gas and air would not preserve their integrity of shape so well, but it would be a difference in degree only, and could be improved by making the chamber shorter, or locating the air slot nearer the orifice. This is a subject to be referred to later.

A patent to Bullwiller was granted by the United States on April 19, 1898, on an application filed January 25, 1897, for "improvements in burners for acetylene gas," which had been patented in Switzerland November 28, 1896. This invention was intended for the same purpose; that is, to obviate the formation of deposits about the orifice of the burner. His plan was to locate what he calls a "hood" above the orifice of the body of the burner, with an opening through it above the orifice of the body of the burner, and yet so near it that the jet of gas would go through it without interruption, and the air would be taken in through the circular opening between the top of the body of the burner and the hood, and the combustion take place on the outer surface of the hood. In this way the air would form an envelope for the gas jet, if Dolan's theory is correct, by the same mode of operation. In order to fulfill the theory of Dolan's patent, his air ducts should be close to the orifice over which combustion takes place. But Bullwiller's hood is integral with the body of the burner, and is essentially a part

Fig.3.

of it. The whole is properly styled a burner and the improvement is of a "burner." The principle or mode of operation of it seems to be the same as Dolan's if the theory of Dolan's patent is well founded. Figure 3 shows one of his forms.

Bullier's patent of 1895 and his additions of that and the following year were for "a species of tip for lighting by acetylene and other gases rich in carbon." It is well to note that in Dolan's and Bullier's patents, as well as in other patents, the words "tip" and "burner" are used to designate the same thing, and

not the orifice thereof. Figures 3 and 5 of Bullier's original patent and Figure 1 of his addition of June 12, 1896, are here shown.

In all of the figures a a are the channels for the gas jets, and b b the air ducts. In figure 1 of the addition, at a point between a and b, the constriction of the pipe leading into the chamber is shown as in Dolan's and in other burners. In his original patent he says:

"This invention relates to a species of tip made up of one or more central conduits for the supply of the gas and of lateral conduits which form air flues, in such manner as to bring about the complete combustion of gases rich in carbon, and notably, acetylene. * * * For definiteness, I have represented, in Figs. 1 to 4 of the drawing, a tip called the Manchester tip, having two orifices a for the exit of the gas and giving a flat flame. Into these orifices open two or a greater number of air conduits, b, formed obliquely with respect to the axis of the tip, in such manner that the current of gas draws in a certain quantity of air which, mixing with the gas, determines the complete combustion of this gas, at the same time augmenting considerably its illuminating power."

Then, to apply his system to Argand burners he says:

"In the application of this system to a tip having a circular slot giving a cylindrical flame, I arrange around the tip a circular ring c as shown in Figs. 5 and 6 of the drawing. This ring, of any suitable material, is mounted in any suitable manner provided that it leaves between it and the tip, for the passage of air, two spaces b concentric to the gas escape slot a; instead of having two slots b which form the spaces of which I have just spoken, I could also arrange series of holes which would subserve the same function."

And he says that his air channels are inclined "so that the current of gas draws in the air." And, as may have been noticed, he says these conduits for air opening into the gas duct may be "two or a greater number." Referring to figures 3 and 5, it is seen that in the former the air comes into the gas duct very near the orifice of the burner, and in figure 5 that the air is drawn in, in a circular form around the column of gas just below the edge of the orifice, and thus (if, as we said before, the valuable feature of Dolan's burner consists in its protecting the orifice from deposits) it is as complete an anticipation of Dolan's device as it is possible to imagine. But Bullier adds that, instead of the circular slots, he "could also arrange

series of holes which would subserve the same function"—that is, a series of air ducts leading from the outside into the gas jet—and thus equipped the burner would be a fac simile of Dolan's; for, although he does not state precisely where in the length of the burner he would put the holes, so neither does Dolan. Bullier states that he inclines the air ducts toward the gas channel, a device apparently to facilitate the draft of air. In the specifications of Dolan's patent he uses the same form of construction. It seems manifest that Bullier might have formulated the third claim of Dolan's patent upon his (Bullier's) description of his own invention, if the French law had required the claims to be formulated. The complainants recognize this in France, for there they manufacture and sell these same burners under a license obtained from the owners of the Bullier patent.

This leads us to the second ground of objection which the appellant urges against the validity of the Dolan patent, which is the lack of definite specifications. The third claim which we are now considering is a combination of the body of the burner, the constricted opening C, the chamber, E, and the air passages, but it makes no requirement in respect of the longitudinal location of the air ducts on the chamber. Nor do the specifications help out the uncertainty. They only require that the air passages shall lead into the chamber above the constriction of the channel. If his had been the first of such burners, perhaps this would have been sufficient, provided the letting in the air near the bottom of the chamber would have answered his purpose. But in the then state of the art he was bound to differentiate his structure from those which preceded him; and especially is this so where the whole merit of his invention depends upon some peculiarity in the elements he employs. We think it may be affirmed as a rule resting upon the fundamental principles of patent law that, where the essence of the invention is the location, form, size, or any other characteristic of the means employed, the patentee must distinctly specify the peculiarities in which his invention is to be found. In two recent cases we have discussed this subject so fully that we do not think it now necessary to do more than to refer to what we have already held, and the authorities then cited on which, as well as upon what we have regarded as sound reason, our opinion is based. Germer Stove Co. v. Art Stove Co., 150 Fed. 141, 80 C. C. A. 9; Bullock Electric Co. v. General Electric Co., 149 Fed. 409, 79 C. C. A. 229.

3. Was the amendment of the application in the Patent Office on May 18, 1897, whereby a new theory of the invention was introduced without a new verification, and in the circumstances shown by the record, authorized by law? In considering this question, it is to be borne in mind that the principal merit of the invention is claimed to be in the location of the air ducts, whereby it is said the gas jet acquires an envelope of air wherein it passes to the place of combustion. In Dolan's original application, filed February 18, 1896, nothing is said of any such purpose, and nothing is prescribed in the specifications or claims to indicate that the burner was to be constructed with a view to the obtaining of any such result. And all of the claims were for the apparatus, and none for a process. There was nothing what-

ever either in the form of the burner or in the theory of its operation to differentiate it from the former art. In April, 1897, a new attorney was employed, who seems to have been more astute than the applicant. At all events, the theory was then conceived that the introduction of the air by a series of ducts around the gas jet would envelope the jet, and that both would pass in that form to the place of combustion whereby the contact of the gas with the orifice of the burner would be prevented. This new conception was not a conception of Dolan's. If there was invention in it, it was not his. His original application made no mention of it, and he made no communication of it to the attorney. He was sworn as a witness, and he characterized the idea as a "lawyer's trick for building up a theory of some kind, which at the time I didn't know anything about. There may be an envelope of air, and there may be a mixture. The whole matter is theoretical to my mind." Thereupon all the specifications and claims were erased and new ones incorporated, the first two claims for the process. The changes made in the application were manifestly to develop the newly conceived theory of the mode of operation, and to add claims for the process. If this was to be accomplished and the theory were to be embodied in practical means, the specifications should have been made to distinctly point out such means, as we have already pointed out. But in that regard the former specifications were retained. If the application as amended were to be construed as embodying such an invention as is now claimed, it was another and different invention from that for which the patent was originally sought, and, if an amendment having that consequence was permissible, it should have been verified by the oath of the inventor. Railway Co. v. Sayles, 97 U. S. 554, 24 L. Ed. 1053; Eagleton Mfg. Co. v. West, etc., Mfg. Co., 111 U. S. 490, 4 Sup. Ct. 593, 28 L. Ed. 493; Kennedy v. Hazelton, 128 U. S. 667, 9 Sup. Ct. 202, 32 L. Ed. 576; Michigan Central R. Co. v. Consolidated Car Heat Co., 67 Fed. 121, 31 U. S. App. 462, 14 C. C. A. 232; Cleveland Foundry Co. v. Detroit Vapor Stove Co., 131 Fed. 853, 68 C. C. A. 233, the last two being cases decided by this court. The case of Eagleton Mfg. Co. v. West, etc., Mfg. Co., supra, was strikingly like the case at bar in all the material facts which were made the basis of decision. Eagleton, the patentee, died soon after making his application. It was prosecuted by his administrators, by their attorneys. The amendment was made by them, but was not sworn to. The invention and application were assigned by the administrators to the Eagleton Company and the patent issued to it. In the present case Dolan 16 days after making his application assigned his entire interest to one Napheys, and it went through two more assignments before the amendment was filed. It is true that in the Eagleton Case the application had been a long time pending when the amendment was made, but that fact was not made the basis of the decision.

Whether in point of fact this theory of the mode of operation, namely, that the jet is enveloped by the air drawn in through the openings in the burner, is well founded or not, is a question upon which the experts whose testimony is in the record are at variance. That

theory is supported by witnesses for the appellee, while those for the appellant hold that the gas and air are commingled in the chamber, and there prepared for combustion. The contention of the appellee seems plausible, and we are in some doubt. The provision of such a chamber was probably intended for the purpose of commingling the gas and air to promote combustion, but it is possible that, in fact, the columns of gas and air retain to some extent a separate identity until after they leave the burner. However, we have in this discussion given the appellee "the benefit of the doubt."

We lay no stress upon the kind of material of which the burners are composed. That was a mere matter of choice and judgment for the artisan. This third claim does not specify what it shall be, and the specification in that regard states that it "is preferably made of lava or other material of a like character adapted to the purpose." Any suitable material meets the requirement.

The first and second claims are for a process or processes. They seem to us to be nothing else than claims for the function of the apparatus described. No doubt it is competent, when the circumstances permit it, for an inventor in describing a machine or apparatus which he has devised, to make a claim for a process which his patented device is capable of carrying out. But to entitle him to do this the process must be one capable of being carried out by other means than by the operation of his patented machine, and, unless such other means are known or within the reach of ordinary skill and judgment, the patentee is bound to point them out; for, unless the public are informed by what other means the process can be carried on, the process is to them nothing else than the operation of the machine—in other words, the exercise of its functions. In the present case no other means or way of practicing the process are suggested by the patentee than the particular device on which his claim for the apparatus rests. And it is impossible for us to see how the process which is the subject of these claims could be worked by any other means than the particular means described by the apparatus. Certainly it is not explained how else it could be done. Moreover, if the apparatus is not new, its functions are not new. See the observations of Mr. Justice Brown in Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 18 Sup. Ct. 707, 42 L. Ed. 1136, and the cases there cited by him; and Wessel v. United Mattress Mach. Co., 139 Fed. 11, 71 C. C. A. 423, and American Crayon Co. v. Sexton, 139 Fed. 564, 71 C. C. A. 548, two recent decisions of this court. Besides, the operation of the earlier burners disclosed the practice of the process the patentee proposes to make the subject of his patent. And in this connection it seems proper to repeat that the application for the patent which Dolan verified by his oath did not allege that he had invented a new process.

We are referred to a decision made by the Circuit Court of Appeals for the Second Circuit in Kirchberger v. American Acetylene Burner Co., 128 Fed. 599, 64 C. C. A. 107, in which the Dolan patent was sustained. But with great respect we are not satisfied with the reasoning in the opinion delivered in that case. Some material facts are

therein assumed which were not, according to our understanding, sustained by the record, if it was the same as it is here. For instance, it is said at page 604 of 128 Fed., and page 112 of 64 C. C. A., referring to the Bullier burner:

"This burner is in many respects strikingly like that in the present suit. There are, however, these radical differences in construction: The air passages in the Bullier burner are located at such a distance below the head as to afford an opportunity for, if not to necessarily cause, a thorough mixing of the air and gas, while in the patent in suit the small chamber and orifice are so located at the uppermost end of the burner as to apparently prevent such mixing."

Now, as we have pointed out, Dolan did not state that his air ducts were at the uppermost end of his burner. He stated only that they came in between the constriction, C, at the lower end of the chamber and the orifice. And this was the very form of Bullier's burner shown in figure 1 of his addition of June 12, 1896, above set forth. Neither Bullier or Dolan states the length of his burner nor the distance of the air openings from the orifice. Neither states the size of his burners, but, whatever that might be, the location of the air openings on the chamber as shown by the respective drawings of Dolan and in Bullier's Addition, figure 1, is about the middle of the length of the chamber in each case, and these drawings are the only means we have of knowing where each would put them. From these it would appear, and especially from Bullier's figure 3 in his original patent, that the air ducts came in nearer to the orifice than do Dolan's, and in Bullier's figure 5 the circular air duct comes in just below the sides of the orifice, with the result of shielding the orifice from deposits as we have before shown. And the whole matter may be summed up in this: That from all that appears the mixing of the gas and air was as likely to occur in Dolan's as in Bullier's and so of the forming of an envelope for the protection of the orifice. The opinion of the Circuit Court of Appeals for the Second Circuit does not deal with the necessity of a definite statement of the locality of the air ducts on the chamber to differentiate his burner from earlier structures. In dealing with the subject of the amendment of the application, that court apparently held that because it did not appear that other inventors whose rights would be prejudiced had entered the field, and because the original drawings sufficiently show and suggest the claims finally made, the amendment was not invalid. As to the first reason, while it is true that in the case cited (Railroad Co. v. Sayles, 97 U. S. 554, 24 L. Ed. 1053) Mr. Justice Bradley referred to the fact that other inventors might be prejudiced by the amendment as a reason for denying its validity, yet that is not assigned as the only reason. It was held by this court in Michigan Central R. Co. v. Consolidated Car Heating Co., supra, that an amendment which brought in the substance of the invention without the verification required by the statute was unauthorized and invalid. We regret to differ from the opinion of the Circuit Court of Appeals for the Second Circuit, but we could not agree without surrendering our own judgment.

Our conclusion is that the decree should be reversed, and the bill dismissed, with costs in the court below and in this court.