# PHILLIPS *v.* SENSENICH.

---

PATENTS; CLAIMS AND SPECIFICATION; INTERFERENCE; AMENDMENT; ESTOPPEL; SUPPLEMENTAL OATH; APPEALS; DISCRETION.

1. The drawing filed with an application for a patent as required by law, with the specifications, constitutes a part of the patent when issued.

2. The language of the specifications of an original application for a patent and the drawings of the applicant, considered, and *held*, over the objections of his opponent in an interference proceeding, to have so disclosed the invention of the issue as to have justified the Commissioner in allowing the applicant to amend.

3. The question of whether a party to an interference was estopped to amend his application does not arise when the amendment was made before the other party filed his application. (Distinguishing *McBerty v. Cook*, 16 App. D. C. 133, and *Luger v. Browning*, 21 App. D. C. 201.)

4. A supplemental or additional oath to an amended application is not required where the amendment is within the scope of the original application. Such an oath need only be made where the applicant dies, and his administrator carries on the proceedings and amends the specifications by inserting new matter of which there has been no previous suggestion.

5. This court would not award priority to one of the parties to an interference because the other party was allowed to amend his application without a supplemental oath, even if such an oath were necessary; but, under circumstances, would reverse and remand the proceedings in order that such an oath might be made and the matter renewed.

6. Where no substantial right of a party to an interference has been affected, this court will not undertake to review the exercise by the Commissioner of Patents of the discretion imposed upon him of regulating the practice of the Patent Office. (Following *Re Marshutz*, 13 App. D. C. 228, and *Re Frasch*, 20 App. D. C. 298.)

No. 462. Patent Appeals. Submitted March 12, 1908. Decided March 31 1908.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.          *Affirmed.*

The facts are stated in the opinion.

Mr. *Thomas A. Connolly* and Mr. *Joseph B. Connolly* for the appellant.

Mr. *Joseph M. Nesbit,* Mr. *Hubert E. Peck,* and Mr. *A. S. Pattison* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents awarding priority of invention to the appellee, Chester D.· Sensenich, upon an issue containing the following counts:

"1. A self-oiling wheel provided with an oil chamber having a filling opening a valve-cage extending into the chamber from the filling opening, the cage being open at its inner end and having slitted or prong-like sides, an inwardly opening valve operative within the cage for normally closing the filling openings, and a valve-holding spring.

"2. A self-oiling wheel provided with an oil chamber having a filling opening in one side thereof, a valve-cage within the oil chamber and extending from the filling opening toward, but stopping short of, the opposite wall of the chamber, the cage being open laterally and at its inner end, an inwardly opening valve within the cage, and a coiled spring extending through the inner open end of the cage and engaging said opposite wall of the chamber and the valve for holding the latter normally in closed position.

"3. A self-oiling wheel having an oil chamber formed with an opening, a valve-cage extending into the chamber and having a tubular end-portion fitting the chamber opening, the cage being open at its inner end and having its sides slotted

from said end toward the tubular end, the interior of the cage tapering toward said tubular end, a valve, and a spring within the cage for holding the valve normally seated and closing said tubular cage end.

"4. A self-oiling car wheel having a chambered hub with an oil inlet through one wall, a valve seat consisting of a pronged guiding seat cast in said wall adjacent to said inlet, a valve, and a spring bearing against said valve and seating against the opposite side of the cavity."

Sensenich filed his application November 9, 1904. Robert F. Phillips filed originally March 6, 1905, and a divisional application August 26, 1905.

The preliminary statement of Sensenich alleged conception about July 1, 1901, disclosure at the same time, reduction to practice about May 1, 1903, and commercial use thereafter.

Phillips alleged conception "about the          day of 1893," disclosure at the same time, making of model about February 1, 1893, embodiment in a full-size car wheel, and reduction to practice July 24, 1905, and commercial use thereafter.

The tribunals of the Patent Office concurred in awarding priority to Sensenich upon each count of the issue. It was found from the evidence that Sensenich conceived the invention as early as May, 1903, reduced it to practice in June or July, 1903, and commenced shipping to consumers on July 18, 1903. It was also agreed that Phillips did not conceive the particular invention described in counts 2, 3, and 4 of the issue until November, 1904. His claim of conception of count 1 in 1893 is based on an exhibit valve and cage made in 1895. This was held not to comply with one of the requirements of the count, that the cage shall have "slitted or prong-like sides." It seems from the decisions, though the record does not embrace the motions to that effect, that Phillips contested the patentability of the issue, and urged the question before the several tribunals, but without success. It would seem, also, that he contested the right of Sensenich to

make the claims of the issue, though the motion therefor, with the direct action thereon, do not appear in the record. The decisions of the Examiners-in-Chief and of the Commissioner show a consideration of this objection, and their concurrence in holding that Sensenich had the right to make the claims.

That question is the only one before us for determination, as all the other reasons of appeal have been abandoned. The reasons of appeal here relied on are the following:

"6. The Commissioner erred in deciding that, notwithstanding the fact that the original claims of Sensenich's application were generic and covered a structure not limited to the specific features in controversy, and notwithstanding that the specific invention in issue was not covered by the original oath, the claims in issue were admissible at the time they were presented without a supplemental oath, and are now patentable to Sensenich.

"7. The Commissioner erred in deciding that the subject-matter in issue was clearly disclosed in Sensenich's original application."

The original application of Sensenich was accompanied by a drawing illustrating the features of his invention. Figures 4 and 5 of this drawing clearly show the slitted or pronged valve cage embraced in the issue. No specific claim therefor was made in the claim originally presented. The valve cages are shown in the longitudinal and cross section of the wheel drawings, No. 2 and No. 3. In the description of the specifications, it is said: "The invention is further directed to a construction wherein a valve cage located within the chamber and projecting through one wall thereof, forms the filling opening." The drawings are referred to as follows: "Figure 1 is a face view of a wheel constructed in accordance with my invention, and figure 2 is an enlarged sectional view taken on line 2-2 of figure 1. Figure 3 is a sectional view taken on line 3-3 of figure 2. Figures 4, 5, and 6 are detail views of the valve cage and valve." Again it is said: "In the present embodiment of my invention the filling opening 7,

located preferably in the outer side wall of one of chambers 4, is formed through the tubular end 8 of the open valve cage 9 which extends into the chamber, said tubular end being secured in and extending through the chamber wall as shown. A valve seat 10," shown, also, in figure 5 before mentioned, "at the inner end of opening 17, is adapted to receive the rounded valve head 11 having the stem 12 which projects into cage 9. * * * The cage operates to hold the valve against lateral displacement and is so adapted as to direct it to its seat." Original claims, 4, 5, 6, 7, 8, 9, and 10 cover a combination in which a valve cage is an element. The first objection of the office was that the claims covered two separate and distinct inventions. Other objections to the claims for incompleteness were also made. This was on December 19, 1904. On January 6, 1905, an amendment was filed specifically describing the slitted or prong-like form of the cage, and three new claims were substituted for the former ones, the second of which reads as follows: "2. A self-oiling wheel provided with an oil chamber having a filling opening, a valve cage extending into the chamber from the filling opening, the cage being open at its inner end, and having slitted or prong-like sides, an inwardly opening valve operative within the cage for normally closing the filling opening, and a valve-holding spring." After some further objections, and addition of claims, not important to mention, the application was allowed. The interference with Phillips was thereafter declared.

The drawing was filed with the application as required by law, and, with the specifications, constitutes a part of the patent when issued. Rev. Stat. secs. 4884, 4889, U. S. Comp. Stat. 1901, pp. 3381, 3383, considering the language of the specifications, quoted above, describing the valve cage as an essential part of the construction sought to be patented, and referring to the drawings of the same which clearly showed its slitted or prong-like form, we agree with the Commissioner that the invention of the issue was sufficiently disclosed in the application to warrant amendment. The argument of the ap-

pellant founded on sec. 4888, Rev. Stat., relating to the particular description of the invention required of an applicant, leaves out of consideration sec. 4903 (U. S. Comp. Stat. 1901, p. 3389), which was designed to meet conditions similar to those presented in this case. The amendment in this case was made, also, before Phillips filed his application, and there are no questions of estoppel to operate against the exercise of the right under the recognized practice. *McBerty* v. *Cook,* 16 App. D. C. 133, 138; *Luger* v. *Browning,* 21 App. D. C. 201.

The contention that a supplemental oath to the amendment was an essential condition is not well founded. The oath required in support of the application by sec. 4892, Rev. Stat. U. S. Comp. Stat. 1901, p. 3384, was regularly made. No additional oath was required to the amendment. Where an applicant dies pending his application, the authority of his solicitors ceases, and, when his administrator caried on the proceeding and amends the specifications by inserting new matter of which there had been no previous suggestion, another oath is essential. *Eagleton Mfg. Co.* v. *West, B. & C. Mfg. Co.* 111 U. S. 490, 498, 28 L. ed. 493, 496, 4 Sup. Ct. Rep. 583; *American Lava Co.* v. *Steward,* 155 Fed. 731, 737. The amendment in this instance was within the scope of the original application. In such a case a different rule applies. Neither the applicant, nor his administrator in case of his death, is required by the statutes relating to patents to make oath to such an amendment. *De La Vergne Refrigerating Mach. Co.* v. *Featherstone,* 147 U. S. 209, 229, 37 L. ed. 145, 13 Sup. Ct. Rep. 283.

Rule 48 of the Patent Office would seem to require a supplemental oath in such a case as this. This is no doubt an excellent rule of practice, and we need not pause to consider whether it may be made to extend beyond the statutory rule above stated. However this may be, the established practice of the Patent Office under it is thus stated in the Commissioner's decision: "The question whether or not a supplemental oath should be required has been uniformly held by this office to be an *ex parte* matter upon which the proper determination

of priority is not dependent." In support of this view a number of former office decisions are cited.

Were we to hold that the practice is unwarranted, we would not be justified in awarding priority to the appellant because of the allowance of the amended application without a supplemental oath. The most that we could do, under such circumstances, would be to reverse and remand the proceeding in order that a supplemental oath might be made and the matter renewed. It may be that the office regards the failure to require the supplemental oath under rule 48 as an irregularity merely, that is cured by the allowance of the amended application, or, as intimated in the decision of the Examiners-in-Chief, that the oath to the preliminary statement to the effect that the applicant is the inventor of the subject-matter of the counts, is sufficient for the purpose. At any rate, as no substantial right of the appellant has been affected, we will not undertake to review the exercise of discretion by the Commissioner in regulating the practice of the Patent Office. *Re Marshutz,* 13 App. D. C. 228, 236; *Re Frasch,* 20 App. D. C. 298, 301.

We are of the opinion that priority was rightly awarded to the appellee, and the decision will be affirmed. The clerk will certify this opinion to the Commissioner of Patents.

*Affirmed.*