# IN RE WHITE.

PATENTS; PATENTABILITY; CLAIMS; PROCESS.

1. While an applicant for a patent, in describing a machine or apparatus which he has devised, may make claim for a process which his device is capable of carrying out, to entitle him to do so the process must be capable of being carried out by other means than by the operation of his machine; and unless such other means are known or within the reach of ordinary skill and judgment, the applicant is bound to point them out; for, unless the public are informed by what other means the process can be carried out, the process to them is nothing less than the operation of the machine,—in other words, the exercise of its functions; and the function of a machine is not patentable.

2. Flanging of pipes is a very common operation, and if the finished article is to have a flanged end, no invention is required to flange it by an ordinary method.

No. 500.   Patent Appeals.   Submitted May 18, 1908.   Decided June 9, 1908.

HEARING on an appeal from a decision of the Commissioner of Patents rejecting certain claims in an application for a patent.                                                    *Affirmed.*

The facts are stated in the opinion.

*Messrs. Whitaker & Prevost* for the appellant.

*Mr. Frederick A. Tennant* for the Commissioner of Patents.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an appeal [by George H. White] from the decision of the Commissioner of Patents refusing claims 4 and 5 of an ap-

plication for a patent for a process of making metal rings for pipe couplings.

The application contained five claims, as follows:

"1. The herein described process of forming metal rings provided with flared ends and an internal bead, which consists in forming a skelp having a central longitudinal bead on one face, and lateral edges inclined toward the beaded face, severing said skelp and forming a blank therefrom having its ends parallel and inclined to the faces thereof, bending the blank into circular form with the bead on the inner side, and welding the ends together, flaring the ends of the ring so formed, and bringing its inclined edges perpendicular to the axis of the ring, and expanding the portions of the ring between said flared portions to bring it to a true circle of required diameter.

"2. The herein described process of forming metal rings having an internal bead and flared ends, which consists in forming a blank consisting of a flat plate of a width substantially equal to the length of the desired ring, and a length greater than the periphery thereof, said plate being provided with a longitudinal bead on one face, and having its edges inclined toward its beaded face, forming the blank into a ring with the bead inside, and welding the ends together, and then flaring the ends of the ring outwardly, and bringing said inclined edges perpendicular to the axis of the ring.

"3. The herein described process of forming metal middle rings for pipe couplings, which consists in bending a plate or blank having its edges inclined toward one of its faces, into ring form, welding the ends of the blank together, and then bending marginal portions at each end of the ring outwardly to bring the inclined faces thereof perpendicular to the axis of the ring, substantially as described.

"4. The herein described process of forming metal middle rings for pipe couplings provided with an internally projecting stop, and having a packing recess at each end, which consists in forming a blank consisting of a flat plate having a longitudinal bead located centrally on one side of the same, bending said blank into the form of a ring, with the bead on the inside, weld-

ing the ends of the blank together, and then bending the marginal portions of the ring at each end thereof bodily outwardly to form the packing recesses, substantially as described.

"5. The herein described process of forming metal middle rings for pipe couplings, which consists in bending a plate or blank into ring form, welding the ends together, and then bending marginal portions only of the ring at each end thereof bodily outwardly out of line with the central portions of the ring between said marginal portions, substantially as described."

The Examiner rejected claims 1, 2, 4, and 5, and allowed claim 3. His allowance of claim 3 was on the ground that it included the beveling of the edges in the flat blank in order to bring the said edges in a plane perpendicular to the axis of the ring after the flaring operation. On appeal to the Examiners-in-Chief they affirmed the rejection of the remaining claims. The Commissioner, on appeal, reversed this decision as to claim 1 and 2, and affirmed the rejection of claims 4 and 5. He said that, "claim 3 having been allowed because it includes the limitation that the beveled edges of the flat blank are inclined towards one of its faces, it is not believed that claims 1 and 2, which include this limitation and also the limitation of forming a blank with a bead thereon,—that is, claims which state the process by which the exact article shown is made,—should be rejected."

The appealed claims, 4 and 5, were rejected on Hambay's patent April 19, 1887, and Boyd's of August 12, 1902.

The invention consists in an improved method or process of manufacturing the middle ring of a pipe coupling similar to the middle ring shown in a prior patent to S. R. Dresser, dated July 8, 1889. This middle ring or sleeve is slipped over the meeting ends of plain or unthreaded pipes, and is provided with a central stop in the form of an annular inwardly projecting bead to center it with respect to the joint, and having a recess at each end to receive the packing rings of rubber. Clamping rings engage the outer faces of the packing rings, and are compressed by bolts which compress the packing rings and produce a tight joint. These middle rings were of cast iron, to which there was

objection on account of sand holes which required testing before use, and became more or less liable to crack under strains, thereby causing leaks in the joints. To avoid these difficulties, Dresser proposed to make the rings of wrought iron or steel. The problem which appellant undertook to solve for Dresser, who is the assignee of his application, was to produce a process of making these middle wrought metal rings at or near the cost of the ones made of cast iron.

The steps in his process are described in appellant's brief as follows:

"1. A 'skelp' or bar of steel or wrought iron is rolled or formed, consisting of a long flat plate, of a width equal to the length of the middle ring, and having on one face a longitudinally disposed central rib or bead, which is to form the centering stop in the finished article.

"2. A section of this skelp is bent into ring form, with the central bead inside, and the ends of the section are united by welding to form a ring, having the internal centering stop.

"3. Marginal portions of this ring at each end are bent bodily outward, to produce the packing recesses, to receive the packing rings."

They are specifically stated in the brief for the Commissioner as follows:

"First. Forming by rolling a 'skelp' having a central longitudinal bead on one face and the lateral edges inclined toward the beaded face.

"Second. Severing the skelp in such a manner that a blank is formed having beveled and parallel ends, by means of which an overlapping welded joint may be formed.

"Third. Bending the blank into circular form with a bead on the inside and its inclined edges overlapping and welding the ends together.

"Fourth. Flaring the ends of the ring so formed, and bringing its inclined edges perpendicular to the axis of the ring.

"Fifth. Expanding the interior portion of the ring to a true circle of the required size."

The appellant contends that he is entitled not only to the

claims for the process of making the rings with beveled edges, but also for the process of making them without. Claim 4 omits the beveled edges, or the lateral edges inclined toward the beaded face, described in claims 1, 2, and 3; and the argument in its support is that, because of the inner bead of the blank, it cannot be bent and welded on a straight or tapered mandrel as in other processes. It is contended that the ordinary mandrel would have to be grooved to receive the bead, which would be locked therein. As Hambay's patent calls for a bead or rib at the end, or near the edge of the ring, it is said to be obvious that a mandrel can be made for bending and welding, with a reduced outer end from which its removal can be made; and it is declared that, "as a matter of fact, the appellant was obliged to devise a special welding device, for which he has been granted a patent."

The process of making the rings of wrought metal and then bending, welding, and truing them was well known, and the alleged novelty of appellant's process consists in doing this with blanks having an inner bead or rib, which could not be carried out on an ordinary mandrel, or one with the reduced outer end, that could be used to accommodate the bead in Hambay's construction. No other way is suggested by which the welding can be successfully done than by means of the apparatus which the appellant has patented for the purpose. And counsel for appellant say in their brief: "No 'similar process' is disclosed in the prior art patents, and no process or apparatus has been disclosed therein which could be used to produce the appellant's ring." As was said in *America Lava Co.* v. *Steward,* 155 Fed. 731, 738: "No doubt it is competent, when the circumstances permit it, for an inventor, in describing a machine or apparatus which he has devised, to make a claim for a process which his patented device is capable of carrying out. But to entitle him to do this the process must be one capable of being carried out by other means than by the operation of his patented machine; and unless such other means are known or within the reach of ordinary skill and judgment, the patentee is bound to point them out; for, unless the public are informed by what other

means the process can be carried on, the process is to them nothing else than the operation of the machine—in other words, the exercise of its functions."

The function of a machine is not patentable. *Risdon Iron & Locomotive Works* v. *Medart,* 158 U. S. 68, 79, 39 L. ed. 899, 903, 15 Sup. Ct. Rep. 745; *Westinghouse* v. *Boyden Power Brake Co.* 170 U. S. 537, 42 L. ed. 1136, 18 Sup. Ct. Rep. 707.

Claim 5, which omits the beaded inner ring, is obviously not patentable. As said by the Primary Examiner: "Flanging of pipes is a very common operation, and if the finished article is to have a flanged end, as in this case, no invention was required to flange it by an ordinary method."

The decision will therefore be affirmed. It is so ordered, and that this decision be certified to the Commissioner of Patents.

*Affirmed.*