## NEY MFG. CO. v. G. A. SWINEFORD CO.

(District Court, N. D. Ohio, E. D. April 22, 1913.)

### No. 15.

1. PATENTS (§ 328*)—VALIDITY—TRACK FOR HAY-CARRIER.
    The Taylor patent, No. 486,812, for a track for hay-carriers, claim 1, *held* void as covering a broad combination of which the patentee never claimed under oath to be the originator or inventor.

2. PATENTS (§ 102*)—PROCEEDINGS TO OBTAIN—AMENDMENT OF APPLICATION.
    An amendment of a patent application introducing a claim not contained in the original application and embodying a construction not specified nor claimed therein must be verified by the supplementary oath of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the applicant in the terms prescribed by Rev. St. § 4892 (U. S. Comp. St. 1901, p. 3384).

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 142; Dec. Dig. § 102.*]

In Equity. Suit by the Ney Manufacturing Company against the G. A. Swineford Company. On final hearing. Decree for defendant.

Bond & Miller, of Canton, Ohio, for plaintiff.

Fay & Oberlin, of Cleveland, Ohio, for defendant.

DAY, District Judge. The bill of complaint of the Ney Manufacturing Company prays for an injunction and accounting against the G. A. Swineford Company for the infringement of United States letters patent No. 486,812, for track for hay-carriers, issued November 22, 1892, to the Ney Manufacturing Company, as the assignee of Bruce Taylor.

Hay-carriers include an overhead track on which runs a trolley from which hay may be suspended to facilitate its removal from one place to another. The patent describes a track made up of sections placed end to end, each section comprising two parallel angle-bars laterally spaced apart by double-shouldered rivets; and a clamp coupler for securing together the ends of the adjacent sections of track.

The patent contains three claims relating to the coupler: Claim 1, claiming broadly the combination with the old double angle-bar track spaced by double-shouldered rivets, of a coupler consisting of a base-plate, a cap-plate, and bolts for clamping the two together; while claims 2 and 3 are limited to the specific form of coupler illustrated in the drawing of the patent.

The defendant claims that the patent in suit was invalid: First, because Bruce Taylor, the patentee, was not the originator of the coupler broadly claimed in claim 1, but that such a coupler was disclosed and explained to him by John Hall, Jr., a dealer in agricultural implements, of Pittsburgh, Pa., and that what Taylor did was to alter the coupler explained by Mr. Hall into the specific form of a coupler described in the patent and set forth in claims 2 and 3. Second, that no claim embodying the subject-matter of claim 1 was in the application originally sworn to by Bruce Taylor, the patentee, but that claim, as well as the complete specification and claims of the issued patent, were substituted by an associate attorney during the prosecution of the application, without the knowledge of the patentee. Third, that the subject-matter of claim 1 did not involve invention in view of patents issued prior to Taylor's alleged invention. Fourth, that the couplers manufactured by the defendant do not respond in terms or spirit to claim 1 of the patent in suit, and therefore do not infringe that claim.

Claim 1, which alone is in issue, reads:

"The combinations, in a track for hay-carriers, of the angle-bars placed side by side, a coupler consisting of a base-plate, a cap-plate, bolts for clamping the two together, and double-shouldered rivets located between said angle-bars with their reduced ends projecting therethrough, whereby said angle-bars are retained against vertical and lateral displacement, substantially as set forth."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Claims 2 and 3, infringement of which is not charged, relate to the specific form of coupler described in the patent.

[1] Bruce Taylor, the patentee, testified that while he was employed as a salesman by the complainant, in the fall of 1891, John Hall, Jr., at Pittsburgh disclosed to him a plan he had of a coupler to couple these angle-bars together, and that at this time Mr. Hall made a rough sketch to illustrate this coupler; that this coupler disclosed to Taylor included an upper plate having a bar which extended about a quarter of an inch down into the space between the angle-bars which formed the track; a lower plate having a bar which extended about a quarter of an inch upwardly into the space between the angle-bars; and two bolts extending through the upper and lower plates by which the plates could be clamped against the track, these bolts being located behind and in engagement with the space-ferrules or double-shouldered rivets, which spaced apart the angle-bars of the track. The bars which extended from the two plates into the space between the track angle-bars were designed to prevent the track from giving sideways at the joint; and the bolts which clamped the two plates together were located back of, and in engagement with the space-ferrules or double-shouldered rivets in order to keep the track from pulling apart endwise.

Substantially these same facts were testified to by Hall. There is considerable dispute in the testimony; evidence being introduced tending to show that Taylor was discharged by the complainant for excessive drinking, and, as a consequence thereof, had considerable ill feeling against complainant company.

The record does not establish that Taylor was the inventor of the device described by claim 1 of the patent; it does not appear that he claimed any other invention than the specific form of coupler described in claims 2 and 3.

There is no doubt that the invention in claims 2 and 3 was the invention of Taylor, and I have cited this part of the record, in order that I may more intelligently refer to the contention made by the defendant, that no claim embodying the subject-matter of claim 1 was in application originally sworn to by Bruce Taylor, the patentee.

Defendant offered in evidence file wrapper of the patent in suit, showing the Patent Office record of the patent application. The file wrapper disclosed that, in the application originally sworn to by Taylor, there were no claims purporting to cover the subject-matter of claim 1 of the patent, and each of the claims which related to the coupler set forth in variant terms the specific form of coupler illustrated and described in the patent. It was this particular form of coupler which Mr. Taylor testified he invented or produced by altering the coupler disclosed to him by John Hall, Jr.

The file wrapper discloses that, after the application was filed in the Patent Office, definite action was deferred until the specifications should set forth the alleged invention in clear, concise, and exact terms, and the Patent Office Examiner stated that:

"If the object had been to furnish a confused specification and contradictory claims, such object could not have been much more completely attained."

It appears from the record that, aside from executing the oath to the original application, Taylor, the patentee, had nothing to do with the application for this patent. After the criticism of the Patent Office, another attorney was secured by the complainant, who shortly thereafter amended the application by canceling completely the original description and claims and substituting therefor a new description, and a new series of claims.

In this amendment there was not presented any claim covering the subject-matter of claim 1 of the patent. Nor was any such claim presented in the next amendment, and not until the final amendment was filed in the case was the present claim 1 submitted.

[2] None of these amendments was verified by a supplementary oath of Taylor, the patentee, and none of these amendments was even submitted for his inspection, or his approval, for he was not consulted after the filing of the application. It is quite plain to me from this Patent Office record that Bruce Taylor never claimed to be the originator of the construction set forth in claim 1. This is developed by files of the Patent Office, and to this effect he testified in this case. It then appears that claim 1 was not included in the original application supported by Taylor's oath, and the amendment submitting the claim was not supported by his supplementary oath. In this case the drawings were the same as in the sworn original Taylor application, and in the unsworn substitute application as later amended by the unsworn insertion of claim 1. Taylor never claimed by sworn statement to be the originator of the subject-matter of claim 1, and that subject-matter was first claimed by an associate attorney in the third and last amendment which he filed.

The record does not disclose that Taylor ever claimed under oath to be the originator of the construction embodied in claim 1. On the contrary, it appears from an investigation of the file wrapper and the entire record that he did not do so. This being the situation, the patent is invalid. The amendment required an oath which had to be subscribed to by Taylor. This oath is lacking, and for want of it the patent is void. Revised Statutes, § 4892 (U. S. Comp. St. 1901, p. 3384); Steward v. American Lava Co., 215 U. S. 161, 30 Sup. Ct. 46, 54 L. Ed. 139, affirming the decree of the Sixth Circuit Court of Appeals reported in 155 Fed. 731, 84 C. C. A. 157; Railway Co. v. Sayles, 97 U. S. 554, 24 L. Ed. 1053; Eagleton Manufacturing Co. v. West, Bradley & Carey Manufacturing Co., 111 U. S. 490, 4 Sup. Ct. 593, 28 L. Ed. 493; Kennedy v. Hazelton, 128 U. S. 667, 9 Sup. Ct. 202, 32 L. Ed. 576; De La Vergne Refrigerating Machine Co. v. Featherstone, 147 U. S. 209, 229, 13 Sup. Ct. 283, 37 L. Ed. 138.

From an examination of the record, I am also of the opinion that this is one of those cases wherein the language of the court in Merriam Co. v. Ogilvie, 170 Fed. 167, 95 C. C. A. 423, and Perkins Electric Switch Manufacturing Co. v. Yost Electric Mfg. Co. (C. C.) 189 Fed. 625, that "an inquiry as to the damages or profits which yield no compensatory profits, or damages, proportionate to the cost of the investigation," describes the situation clearly.

The patent has expired over three years ago, the amount involved

is very small indeed, and from the view which I take of the case the patent is invalid.

The bill of complaint will be dismissed.