PARAMOUNT HOSIERY FORM DRYING CO. v. MOORHEAD
KNITTING CO.

(District Court, M. D. Pennsylvania.   July 16, 1918.)

No. 236a.

1. PATENTS ☞328—VALIDITY—APPARATUS FOR DRYING AND SHAPING HOSIERY.

The Collis patent, No. 1,114,966, covering an apparatus for drying and shaping hosiery and the like, *held* invalid for anticipation and public use.

2. PATENTS ☞328—VALIDITY—FINISHING AND SHAPING HOSIERY—USE OF APPARATUS.

The Collis patent, No. 1,204,945, for improvements in the art of finishing and shaping hosiery, in connection with the use of apparatus patented, and as disclosed in the application for such patent, *held* invalid, as anticipated by prior use of similar apparatus.

3. PATENTS ☞120—SUBSEQUENT PATENT—FUNCTION OF INVENTION.

To sustain a subsequent patent, there must be something distinctively different from that covered by the first patent, and the mere function of a patented invention cannot be made the subject of a separate and subsequent patent.

4. PATENTS ☞129—ATTACKING VALIDITY—ESTOPPEL OF LESSEE.

A provision in a contract for the use of patented apparatus that, in any suit by lessor against lessee, the latter shall not attack the validity of the patents, must be limited to a preceding condition for the payment of rent, and does not estop lessee, sued by lessor, solely on account of lessee purchasing and using other apparatus regarded by lessor as an infringement.

5. PATENTS ☞216—SUIT BY LESSOR AGAINST LESSEE—COUNTERCLAIM—CONDITION PRECEDENT.

In a suit by lessor against lessee of patented apparatus, tender or return thereof is a condition precedent to a counterclaim for rental paid, based on the ground that the contract was obtained through misrepresentation.

In Equity.   Suit by the Paramount Hosiery Form Drying Company against the Moorhead Knitting Company.   Decree rendered.

Snodgrass & Smith, of Harrisburg, Pa., Edmund H. Parry, of Washington, D. C., Howson & Howson, of Philadelphia, Pa., and R. F. Rogers, of New York City, for plaintiff.

Fraley & Paul, of Philadelphia, Pa., for defendant.

WITMER, District Judge.   The defendant is charged with infringement of two patents granted to George Collis—the one, No. 1,114,966, dated October 27, 1914; the other, an alleged divisional thereof, No. 1,204,945, dated November 14, 1916.   The first patent covers an apparatus for drying and shaping hosiery and the like, consisting of an internally steam-heated metal hosiery form, being narrow relatively to its width, and having its opposite narrow edges substantially sharpened.   The second patent is for improvements in the art of finishing and shaping hosiery, in connection with the use of the apparatus patented and as disclosed in the application for such patent.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

251 F.—57

The plaintiff asserts infringement of the following claims of the apparatus patent:

12. An apparatus for drying and shaping textile hosiery articles, including in combination a support, a hollow article, holding and shaping member, mounted on said support and being narrow in cross-section relatively to its width, and having its opposite edges substantially sharpened to effect the formation of a crease in and a shaping of the article, and means for supplying a heating medium to the interior of said shaping member for heating the same from within, and thereby effecting evaporation of moisture from the article sustained thereby.

39. A device for drying and finishing moistened hosiery, comprising a steam-heated metallic form having a substantially sharpened edge to shape, crease, and finish the article mounted thereon simultaneously with its drying, when heated from within, and provided with a passage for a heating medium.

40. A stocking mold for simultaneously drying, shaping, and finishing moistened hosiery, comprising a hollow, metallic form, having its sides converging and its edges substantially sharpened to crease and finish the article mounted thereon simultaneously with its drying, when the form is heated from within.

43. In hosiery finishing apparatus, a metallic device having its sides converging to form-sharpened edges, and functioning simultaneously to dry, crease, and finish the article mounted on the exterior thereof, when the form is heated from within, and means for maintaining heat within the device.

And infringement of the method patent, as follows:

3. The method of treating a moistened hosiery article, which consists in subjecting the internal surface of its sides to a flattening action and effecting a single creaselike formation at each of its edges, whereby the articles will be caused to assume a flattened shape, and simultaneously drying and fixing the fabric of the article by the application of heat to the internal surface thereof, so that it will retain its flattened shape.

4. The art of finishing hosiery, which consists in applying heat to the internal surface of a moistened hosiery article, to evaporate its moisture, and at the same time subjecting the same to a flattening and smoothing action on its internal surface, whereby the finished article will be substantially flattened into one plane at and between its edges.

5. The method of shaping hosiery, which consists in stretching the fabric thereof in one direction to the dimensions of the ultimate flattened product, applying heat to the internal surface thereof, to evaporate the moisture therefrom, and to set the fabric as stretched, and simultaneously ironing the same internally into a form which is flattened at and between its extreme front and rear edges.

The defendant does not seriously deny the charge of using an apparatus or form and practicing the method covered by the patents to Collis, but it does insist that both patents are invalid by reason of anticipation and public use. The issue between the parties involves the validity of both patents. True, the plaintiff now only insists on a decree upon the charge involving his method patent, but the case as presented requires and involves the consideration of both patents.

These patents relate, as already noted, to the manufacture of hosiery, and especially to that class or type of hosiery known as seamless hosiery, which is knit in tubular form, and also to full-fashioned hosiery, which is knit to shape in a flat sheet and then sewed to produce a stocking with a seam, having as a primary purpose the function of drying the hosiery simultaneously with the shaping and finishing thereof.

The conception to which Collis lays claim, covered by his patents, consists in drying hosiery made of unset knitted fabric, and while yet wet and in process of drying shape, crease, and finish the same by one and the same operation, and by use of one and the same device, the apparatus or form patented. That the device is useful and an advance in the art of manufacturing and preparing ready for the market hosiery of the kind cannot be denied. The defendant is using the same in preference to the old means formerly employed to the same end, that of wooden boards, dry boxes, and presses, which have thereby been largely displaced; but was Collis the first to conceive and reduce to practical use this idea or means?

[1] Taking up the apparatus patent, we find that the plaintiff's pred-cessor and those acting on its behalf, during the year 1912, purchased from one W. H. Ermentrout, of Reading, Pa., some internally heated metal hosiery forms having shape and crease producing edges like the Collis or Paramount forms. After satisfying itself of the utility of these forms for drying and shaping stockings, the business, including a patent for details in the operation of the forms, was purchased, and the company went into the manufacture and sale of them. Some months after buying out Ermentrout, and while negotiating with a knitting mill in Rockford, Ill., for the sale of the forms, it was discovered that a man named George Collis, of Clinton, Iowa, had produced and employed similar forms, for which he then had a patent application pending in the Patent Office. The same parties, owners of the Ermentrout forms and business, then purchased the Collis patent application and also his forms, and, prosecuting such application, obtained the original patent in suit, three days after filing application for divisional patent afterward allowed.

Regarding the purchase of the Collis application, Mr. Pope, president of the defendant company, explains that, after offering the Ermentrout forms to some of the mills in the neighborhood around their territory:

"We had the Paramount Knitting Company fairly well equipped, and on a trip to Rockford I showed them; and the foreman there told me that probably they knew more—some things about this drying business—than we did, and it led to the disclosure of the Collis invention. Of course, it was a disturbing proposition. We had equipped our mill and had sold some forms. An investigation was made, and we concluded that Collis had the apparatus and outdated the Ermentrout form, and for security to ourselves and to the people we had sold we thought the thing to do, if possible, was to secure the Collis application, and it led to our making arrangements and buying it."

Collis filed his application June 27, 1911, while the evidence produced proves that he exhibited sketches of his forms during the spring or summer previous. The earliest date claimed for the completion and use of some of his forms is about the middle of September, 1910. Accepting this as the date to which the patentee can lay claim to his invention, what was the state of the art at this time?

The prior patented art was shown in the British patents, Webster, No. 13,854, of 1751, Berridge & Blunt, No. 19,283, of 1890, Watson, No. 12,941, of 1895, and American patent, Pease, No. 568,874, of 1898. It may be true, as said on behalf of applicants in a letter addressed to the Patent Office that:

It was "common practice to dry hosiery on hollow metallic support, or so-called board; but it is entirely new in hosiery drying to shape the article simultaneously with drying it. * * * By shaping is meant the creasing of the article at opposite points, namely, at the front and rear portions."

Presumably the patent to Collis was allowed upon this narrow distinction, that of form with sharp crease-producing edge. Whether the patent could be distinguished from the Berridge patent, producing four distinct folds or creases, instead of two, as admitted by plaintiffs' expert, Dr. Knealy, need not be attempted; the fact being that the actual working prior art, as distinguished by the patented art, shows that as a matter of fact the single feature of distinction relied on to obtain a patent for Collis had been employed upon forms in every respect identical with those shown and described in the Collis patent. Turning back to Ermentrout, we find him in the fall of 1911 manufacturing and installing his forms in hosiery mills in and about Reading. These forms were like those sold to the Paramount Company, and were used to dry, shape, and crease hosiery as it came from the dye house. Ermentrout had seen and copied the form manufactured and sold by him from a circular, with picture of the original Anthony sharp-edge hosiery form. This circular was gotten out early in 1911, and Ermentrout began his work in September.

To Hiram J. Anthony, of Gloversville, N. Y., may easily be traced the origin of the product advertised in the circulars that fell into the hands of Ermentrout. He produced his first stocking form in October, 1904. This original form, unchanged, has been produced, and in it are embodied all that can be claimed by the plaintiff. It is practically a complete duplicate of plaintiff's forms. In the year 1908 Anthony's business was consolidated with the Curtin-Heubert Company and organized into a corporation called the Curtin-Heubert-Anthony Company. Anthony's old shop was in continued use, and the stocking form remained there until 1910. It was hanging on the wall, and seen and examined by many persons. Soon after Anthony produced it, an effort was made to install it in a hosiery mill in Brooklyn, but without success. The Curtin-Heubert-Anthony Company manufactured, upon order left, dated February 5, 1910, for the Niagara Silk Mills, at North Tonowanda, N. Y., two of the Anthony forms, which were shipped March 28, 1910, and set up at one of their mills at Dunkirk, N. Y. Like hosiery forms were also made by the Curtin-Heubert-Anthony Company for Paul Guenther of Dover, N. J. The shipment was on December 13, 1910. During the latter part of the year 1909, Webb and Hildreth, at their machine shop in the town of Gloversville, N. Y., near to the Curtin-Heubert-Anthony Company's place of business, in whose shop the men in the employ of the former company saw the Anthony form, manufactured for and delivered to the Gloversville Silk Mill, as appears by charge upon their books under date of December 11, 1909, "four (4) stocking boards complete." These boards were set up and put in commercial use, and are in place, as appears by photograph offered in evidence. Similar boards or forms were also manufactured and installed by the Merrill Silk Mills, at Hornell, N. Y., during the latter part of the year 1909 and early in 1910. They

were installed about the 25th of January, 1910, and used thereafter in the drying, creasing, and finishing of the hosiery output of the mill.

[2] Turning, now, to the art or method patent, it must be conceded that all that can be claimed for the Collis form or apparatus, as providing a distinctive method or art for drying and shaping hosiery, passing for the time being the feature of imparting thereto a distinctive creasing, may be claimed for the forms patented to which reference has already been made. Watson in his specification says:

"It has hitherto been the practice to finish stockings, socks, and half hose, and similar articles of hosiery, by the use of boards and presses and the application of heat to the outside of the fabric."

The object of his invention, he says, "is to dry and finish such articles of hosiery, stockings, socks, and half hose, etc., from the inside." Now, how does he propose to do this? By using substantially the same means or method, excepting as to the characteristic forms, as were and are now employed by plaintiff and defendant in the use of their forms. He says:

"A series of hollow molds of suitable shapes, made of brass or other suitable substance, is supplied with steam, hot air, or hot water, at a suitable pressure. Over these molds the articles to be dried or finished are drawn and allowed to remain till the process of drying and finishing is complete."

True enough, the finish imparted by the use of the Watson patent would possibly not compare with the Collis, in that the article finished, the stocking, for instance, would be wanting the sharp crease imparted by the latter.

Mr. Livermoore, defendant's expert, in distinguishing the Collis method or Collis forms from the prior art forms and use of them in drying stockings, says that "the difference is what comes and results from the shape of the form itself and its action on the material," independent of the manner of moistening. This expresses the conclusion of the court, but, should such result, the finishing or creasing resulting from the character of the instrumentality used be imputed to the use of the method rather than to particular characteristic of the apparatus; the form being narrow relatively to its width, and having its opposite narrow edges substantially sharpened, constituting the very distinction of the apparatus first patented by Collis.

As it was so well stated on behalf of the applicant in a letter supporting the apparatus application:

"The particular form of structure effects a superior function and gives to the device a new property, namely, that of simultaneously drying and shaping the article, so that when dry, it will lie flat and without wrinkles. In other words, the change in form has changed the function of the device, and has given to it a property that no one before applicant contemplated, wherefore the device accomplished a new result."

[3] The end to be obtained through the art or method claimed, that of finishing stockings with a sharp crease, is, it appears, natural, and follows necessarily from the use of the patented apparatus or device. The result is consequential and functional, and embodied in the patented object producing it. To sustain a subsequent patent, there must be something distinctively different from that covered by the first patent.

The mere function of a patented invention cannot be made the subject of a separate and subsequent patent. Miller v. Eagle Mfg. Co., 151 U. S. 186–201, 14 Sup. Ct. 310, 38 L. Ed. 121; Busch v. Jones, 184 U. S. 598, 22 Sup. Ct. 511, 46 L. Ed. 707; Risdon Locomotive Works v. Medart, 158 U. S. 77, 15 Sup. Ct. 745, 39 L. Ed. 899.

"No doubt it is competent, when the circumstances permit it, for an inventor, in describing a machine or apparatus which he has devised, to make a claim for a process which his patented device is capable of carrying out. But to entitle him to do this the process must be one capable of being carried out by other means than by the operation of his patented machine, and, unless such other means are known or within the reach of ordinary skill and judgment, the patentee is bound to point them out; for, unless the public are informed by what other means the process can be carried on, the process is to them nothing else than the operation of the machine—in other words, the exercise of its functions." American Lava Co. v. Steward et al., 155 Fed. 738, 84 C. C. A. 157.

No other means of practice is pointed out in the method or art patent than the use of the device on which the claims for the apparatus patent rest. Should there be any doubt about the functions of the device, such are entirely expelled by the patentee, wherein he claims:

43. "In hosiery finishing apparatus, a metallic device having its sides converging to form sharpened edges and functioning simultaneously to dry, crease and finish the article mounted on the exterior thereof when the form is heated from within."

Taking from the claims of the method patent the functions here claimed for the apparatus nothing remains to be patented. Having already found that the Collis form patent was anticipated by prior use of similar forms the use of such forms necessarily resulting in the practice of the art, that of simultaneously drying, creasing, and finishing hosiery by means of a metallic device having its sides converging to form-sharpened edges, also anticipated the application for a divisional art patent.

[4] Plaintiff has, however, objected to the consideration of the validity of these patents upon the ground that the defendant, by reason of his relation with the plaintiff, is estopped. The defendant rents from the plaintiff a number of the Paramount forms under a writing, agreeing to pay for the use thereof a rental, or so-styled royalty. It is indeed not royalty that defendant has agreed to pay for he is not a manufacturer of the forms, but a borrower or lessee for a consideration, with the implied license to use. While a licensee, in the sense of a person permitted to use a patented article he buys, he is not such licensee as the term implies, where permission is given by a patentee to manufacture and sell his patented device on royalty or otherwise. But it is argued that the defendant has in his contract with the plaintiff consented and agreed that:

"In any suit or suits which the lessor may institute against the lessee, the said lessee shall be stopped from infringing or attacking the validity of said patents, or any of them."

This estoppel provision, considered in connection with the preceding portion of the paragraph, must be restricted and limited to the condition therein covered as to payment of royalty or rental, etc. Then,

also, it will be noted that the provision applies to the parties in their relation as lessor and lessee, or, in other words, in a suit between them upon the contract. In the case here presented, and now under consideration, the plaintiff elected to treat the defendant as an infringer, not by reason of anything growing out of their relations under the agreement between them, but on account of purchasing and using the Walter Snyder forms which are regarded by plaintiff as an infringement of its monopoly. The action here is one in tort, and not upon the contract, and is therefore not embarrassed by the estoppel here advanced.

[5] The defendant by way of counterclaim asks to be relieved from its contract with the plaintiff, relative to the leased forms, on the ground that such contract was obtained through misrepresentation, and that plaintiff account to defendant for rental paid in consideration thereof. Whether the defendant's assent to the contract for the leasing of the forms was obtained through misrepresentation need not be here decided, it being conceded that defendant has used these forms and is continuing to do so to this time; and that he has not surrendered or restored them to the plaintiff, nor offered to do so. By the weight of authority such return or tender is a condition precedent to the filing of a bill in equity for rescission, or its equivalent, the filing of a counterclaim, as in this case. Reeves v. Corning (C. C.) 51 Fed. 774; Bird's Appeal, 91 Pa. 68.

The defendant being benefited by the use of plaintiff's forms, it would, it seems, be inequitable and unconscionable to deprive the plaintiff of his contract, without an effort at least on the part of defendant to restore to plaintiff his property, except on defendant's own terms, which the court will not recognize.

A decree may be submitted in accordance herewith.