## VALVONA–MARCHIONY CO. v. MARCHIONY.

(District Court, D. New Jersey. July 10, 1913.)

1. PATENTS (§ 157*)—CONSTRUCTION OF CLAIMS—"SUBSTANTIALLY."

"Substantially" is a relative word, which, while it must be used with care and discrimination in a claim of a patent, must nevertheless be given effect by allowing considerable latitude of meaning, where it is applied to such subjects as thickness, as by requiring two parts of a device to be of substantially the same thickness, and cannot be held to require them to be of exactly the same thickness.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 229–232; Dec. Dig. § 157.*

For other definitions, see Words and Phrases, vol. 7, p. 6741.]

2. PATENTS (§ 163*)—CONSTRUCTION OF CLAIMS—ESTOPPEL BY ACTION OF PATENT OFFICE.

To be estopped by the action of the Patent Office, a patentee must be shown to have surrendered something which he now claims, in order to obtain that which was allowed.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 238; Dec. Dig. § 163.*]

3. PATENTS (§ 328*)—INFRINGEMENT—APPARATUS FOR BAKING BISCUIT CUPS.

The Valvona patent, No. 701,776, for apparatus for baking biscuit cups for ice cream, construed, and held infringed.

4. EQUITY (§ 69*)—LACHES.

Mere laches does not usually bar a party, unless under circumstances which work an equitable estoppel against him.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 197–199; Dec. Dig. § 69.*]

In Equity. Suit by the Valvona-Marchiony Company against Italo Marchiony. On final hearing. Decree for complainant.

H. H. Huffaker, of Louisville, Ky., and F. W. H. Clay and Frederick W. Winter, both of Pittsburgh, Pa., for complainant.

Lucius E. Varney, of New York City, for defendant.

CROSS, District Judge. The patent involved herein was sustained in 1905, by Judge McPherson, then District Judge for the Eastern district of Pennsylvania, in the case of Valvona v. D'Adamo (C. C.) reported in 135 Fed. 544, and again in 1913, by Judge Orr, of the Western district of Pennsylvania, in Valvona-Marchiony Co. v. Fred Perella et al., 207 Fed. 377. It has also been sustained in two or three other unreported cases, which, however, do not require special mention, since the defendant's counsel, at the argument herein, admitted the validity of the patent in suit, but claimed that in view of the prior art, and in consonance with said decisions, it must be narrowly construed, and that, so construed, it has not been infringed by the defendant.

It is stipulated in the case that the patent in suit, No. 701,776, was duly granted in 1902 to Antonio Valvona; that since April 9, 1910, the same has been the property of the complainant; that the three machines marked "Complainant's Exhibit, Defendant's Machines, A, B, and C," were made and used by defendant within the jurisdiction

of this court before the filing of the bill of complaint herein, and since the complainant acquired title to the patent as above stated; and, furthermore, that the said machines are the identical machines which were exhibited to and inspected by the complainant's expert witness. The machine is entitled in the patent an "Apparatus for Baking Biscuit Cups for Ice Cream." It is very simple and readily comprehensible, notwithstanding the conflicting explanations of the experts of the respective parties. The patent has only one claim, which reads as follows:

"1. A combined mold and oven for producing biscuit cups or dishes, consisting of two metal plates connected together by a hinge and provided with handles and means for securing said plates in closed position, the opposing inner faces of the said plates being provided, one with a projecting core and the other with an indented mold in the metal of such face into which the core fits with a small space between the two, and the outer faces being so formed as to be adapted to rest on the top surface of a stove either side up, so that heat may be evenly conducted through the body of the mold, all the heat absorbing and conducting sides of the mold being of substantially the same thickness, whereby a cup may first be formed with the projections downward and afterward baked in the reverse position to facilitate the baking and allow the cup to be turned out of the mold, as and for the purpose described."

The objects and aim of the patented device are stated by the patentee as follows:

"By the use of the apparatus of this invention I make cups or dishes of any preferred shape or design from dough or paste in a fluid state that is preferably composed of the same materials as are employed in the manufacture of biscuits, and when baked, the said cups or dishes may be filled with ice cream, which can then be sold by the venders of ice cream in public thoroughfares or other places. In order to produce said cups or dishes, I provide a combined metallic mold and oven, consisting of two plates, as *a* and *b*, each of said plates having a piece *c* projecting from its edge at one side, connected by a hinge *d*, and each plate provided with a handle *e*, projecting from its opposite edge. The faces of the aforesaid two plates are provided or formed, respectively, with one or more cores *f* and dies *g*, one fitting close to each other. All the heat absorbing and conducting sides of the mold are of substantially the same thickness, so that heat may be evenly conducted through the body of the mold, as will be seen by reference to the drawings.

"The biscuit dough or paste, which is of the consistency of a thick fluid, is poured from a can, that may be provided with one or more spouts for depositing the required quantity of paste either successively or simultaneously in each of the dies or molds *g*. The plates are then closed, and the cup or dish is formed by the dough being pressed into the space between the core *f* and the mold *g*. It is then baked by the apparatus being placed over a gas or other fire, the formation of said apparatus enabling it to be turned as frequently as required, and the biscuit cup thereby uniformly baked. To make these thin-shaped cups satisfactorily from paste, with the thin walls described, and to insure their proper 'turning out' of the molds in good shape, properly baked, I find it necessary to first heat the molds, then pour in the batter, and bake with the projections downward for awhile, then reverse the mold and bake in that position. This enables me to readily remove the cups from the mold in perfect condition, and to this end I have constructed my mold so as to enable it to be readily reversed and to occupy a stable position on the top of the gas range or the like."

. In view of the admission made at the oral argument that the patent in suit is valid to the extent above mentioned, the only vital question

remaining for solution is that of infringement, which it is thought may be solved readily by a simple examination and comparison of such differences as exist between the apparatus of the patent and that of the defendant. With that end in view, such an examination has been made, without, however, disclosing any material differences between them; such as exist are matters of form and degree. Structurally and functionally the devices are substantially alike. Among the differences that may be noticed are a somewhat changed contour, particularly of the lower side of the lower plate, and a larger number of mold cavities in the apparatus of the defendant, with their corresponding cores, as well as a difference in the depth and shape of such cavities. These, however, are all matters of detail, which do not require serious consideration. As to the differences in the shape of the recesses and cores, it appears that those of the patent are truncated cones, while the defendant's are perfect cones. The specification of the patent, however, provides in specific terms for modifications of this character; but, whether it did or not, such changes are immaterial and would not avoid infringement. What has just been said as to the change in the shape of the cones and mold cavities is equally applicable to their increased number. The drawings of the patent show but two or three cones with corresponding cavities, while the defendant's device has perhaps ten or more. This, however, is but a matter of duplication, and forms no basis for patentable invention, or of justification for infringement.

What apparently furnishes the main reliance of the defendant in support of his claim of noninfringement is contained in the allegation that the contour of the lower plate—that is to say, the bottom of the lower member containing the mold cavities of his machine—varies from that of the patent, and that such variation is vital, because the complainant, by the term "indented mold," as used in the claim, is restricted to a particular form of mold, which the defendant does not use. This argument seems to be based upon a suggestion of defendant's expert, who maintains that a mold made conformably to the term "indented mold" must have its cavity formed in part only in the plate forming the lower member of the device, the balance being positioned in a boss which projects from and below the lower face of such plate; that is to say, the defendant contends for a construction which will not be satisfied with indentations or cavities which appear in their entirety in the inner face of the lower plate, but rather for a construction which requires, that such indentations or cavities shall have corresponding protuberances or projections on the opposite and outer face of the lower plate. Manifestly, however, the term relates to and describes merely a die cavity or recess *in the inner face* of the lower plate, or, using the language of the claim, "in the metal of such face," and does not even suggest, much less require, a projection opposite thereto, upon the outer face of such plate. A thing may fairly and truthfully be said to be indented when it has a hollow or depression in its surface, and this in utter disregard of whether the hollow or depression is manifested upon the opposite side by a corresponding protrusion; in other words, an indentation may exist without regard to the configuration of the opposite side of the article in which the in-

dent appears. The only apparent justification for the expert definition just referred to is found in the fact that the drawings of the patent, which show the cavities in the lower plate, also show bosses or projections on the under side of such plate opposite the indents or depressions.

At this point it may properly be remarked that the defendant at first made his mold cavities in that form; but upon being threatened with a suit for infringement of the patent in suit, and in order to avoid that charge, he thereafter made the lower plate of the machine of sufficient thickness in and of itself to contain the cavities, thereby avoiding the necessity of having any corresponding bosses or projections on its opposite side. It is manifest, however, that the functional effect of the device was not altered by the change. It was a rather poor expedient, admittedly adopted to avoid a charge of infringement. The functional effect of the mold is not altered, whether the lower face of the plate, in which the indentations are, is by reason of its thickness smooth and solid, as in defendant's machine, or in the form of projecting bosses, as in the patent. As already suggested, the claim says nothing about the thickness of the plate, or of the contour or form of its lower and outer surface. All that the claim requires is that the plate should have therein indentations or mold cavities, which, as interpreted by the specification, must be sufficiently large to contain the corresponding cores of the upper plate, while at the same time leaving between them the requisite space to hold the batter to be baked. What the defendant did, and all that he did, by way of distinguishing his device from that of the patent, in order to avoid a charge of infringement, was to increase the thickness of one of the parts; and, even if it were unguardedly and improperly admitted that this change constituted a patentable improvement, still the device as a whole would not even then escape the charge of infringement.

Another point which defendant's counsel claims distinguishes the defendant's device from the complainant's has reference to the meaning which should properly be attached to that part of the claim which says:

"All the heat-absorbing and conducting sides of the mold being of substantially the same thickness."

He strenuously contends that this language relates to the lateral or sloping side walls of the bosses or protuberances within which are formed the small mold cavities of the lower plate. In considering this clause, it should be kept in mind that the phrase does not say that all of the sides of the molds are to be substantially of the same thickness, but only the "heat absorbing and conducting sides of the mold." In determining which of the sides of the mold answer that description, reference must be had to the specification, from which we learn that all of the small forms in which the pastry cones or cups are baked are attached to or form a part of the larger plates $a$ and $b$ of the "mold and oven," and that it is these plates which in the process of baking are, by turning the apparatus, successively exposed to the direct heat of the "gas or other fire," and so become the "heat absorbing and conducting sides of the mold." Thus the patentee says that his mold, evi-

dently the entire apparatus, is constructed so as "to be readily reversed and to occupy a stable position on the top of the gas range or the like." The specification tells us, as does also the first line of the claim, that his apparatus as a whole is "a combined mold and oven for producing biscuit cups or dishes," and it is this combined mold and oven, the upper and lower sides of which consist of two large metal plates, whose outer faces are, pursuant to the claim, to be "so formed as to be adapted to rest on the top surface of a stove either side up, so that the heat may be evenly conducted through the body of the mold."

[1] From the reference just made, it seems plain that the heat absorbing and conducting sides of the mold are the two plates which form the upper and lower sides of the apparatus as a whole, and which the patentee repeatedly directs to be exposed successively to the fire by turning in the process of baking. The language referred to does not, therefore, it may be said with assurance, refer to the inclined sides and surfaces of each of the small individual molds. These are not, within the meaning of the claim, as interpreted and explained by the specification, in any sense the "heat absorbing and conducting sides of the mold." At no time are the sides of the small molds directly exposed to the flames, or laid, or capable of being laid, upon the heated surface of a stove or range. So much only of the "mold and oven," therefore, as is directly exposed to the flame, or rests directly over the gas, or upon a stove, can, with propriety be said to be its heat absorbing and conducting sides. That this is the correct interpretation is, moreover, apparent from the discussion which took place in the Patent Office when amendments D and E were under consideration therein. An examination of the device of the defendant shows that its upper and lower plates are exposed, exactly as those of the complainant's are, to the heat of the flame in baking, which heat they absorb and in turn conduct to the small molds. Furthermore, the heat absorbing and conducting sides of the molds of the two devices are of substantially the same thickness, which is all that the claim demands. Unquestionably considerable latitude must be allowed in determining the meaning of that phrase. Individual opinion is bound to differ in regard thereto.

Counsel for the defendant has brought to the court's attention the case of Adams et al. v. Edwards et al., 1 Fed. Cas. 112, 114, 115 (No. 53), where Judge Woodbury, in charging a jury as to the meaning of the word "substantially," said:

"When we say a thing is substantially the same, we mean it is the same in all important particulars. It must be of the same material, when the material is important; it must be of the same thickness, when the thickness is important," etc.

Manifestly the judge, in defining the phrase as he did, acted without due consideration, or else, as is more probably the case, was misreported, since by the language as reported he gave no effect whatever to the word "substantially" in the sentence in which he spoke of "thickness." The reporter put him in the attitude of saying that the phrase "of substantially the same thickness" means precisely the same as the phrase "of the same thickness," thereby leaving wholly out of

consideration the very word he was attempting to define. "Substantially" is a relative word, which, while it must be used with care and discrimination, must nevertheless be given effect. The patent demanded that uniformity of thickness of metal, and that only, which would necessarily tend to secure the equal heating and consequent uniform baking of the pastry in the mold.

[2] Much stress is laid by defendant's counsel upon the fact that this clause was inserted in the Patent Office by the examiner immediately prior to its allowance, and that because of its forced insertion a very serious limitation was imposed upon the claim. The patentee, however, surrendered nothing when the clause in question was added, as it was, to distinguish it from the Ageter Swiss patent of 1889, which device, by the way, was only intended for use in an ordinary closed oven, while that of the patent in suit combined in itself a "mold and oven," manifestly a totally different apparatus. Hence the added clause worked no estoppel against the complainant of the character now claimed. As was said by Judge Lurton, in Bundy Mfg. Co. v. Detroit Time Register Co., 94 Fed. 524, 543, 36 C. C. A. 375, 394:

"To be estopped by the action of the Patent Office, the patentee must be shown to have surrendered something which he now claims in order to obtain that which was allowed."

This familiar language is instructive as to the line of demarcation between the conduct of an applicant which will, and that which will not, work an estoppel against him. The complainant is not here contending that the heat absorbing and conducting sides above indicated should not be of substantially uniform thickness, and for the purpose mentioned. Indeed, its patent is in part based upon that very condition, and its drawings show clearly the intention of the claim in that respect. What it is claiming, and what the defendant is denying, is that his apparatus infringes that portion of the claim; the defendant meanwhile, in furtherance of its contention, urging upon the court what is believed to be an erroneous definition of what constitutes the heat absorbing and conducting sides of the mold.

[3] The patentee of the patent in suit apparently was not treated very generously in the Patent Office. He seems to the court to have invented more than he secured. How this occurred it is unnecessary to speculate, although the solution seems to lie on the surface of the contents of the file wrapper. But, however it happened, this court is averse to paring away the comparatively little he did secure, particularly in favor of a former partner, who at first admittedly infringed the patent, and then, in attempting to escape that charge, made, under the advice of counsel, but a slight mechanical change in construction. The defendant never invented a single detail of the apparatus in question. He never invented the biscuit ice cream holder. All he did was to enter into partnership with the patentee, as above stated, and in a few months, and quite probably as soon as he had learned all that he wished to about the biscuit machine and business, dissolved the partnership, went into business for himself, at the same time adopting and using the patented machine, until he was warned that he was infringing it, whereupon, with the aid of a lawyer, he made such changes therein, and such only, as he was advised would distinguish his de-

207 F.—25

vice from that of the patent, and enable him with safety to continue his business at the expense of the patentee.

Indeed, a short extract from the defendant's brief will show how little of real difference there is, according to his own contention, between the defendant's machine and that of the patent in suit. The extract referred to is as follows:

"There is no question that these machines [Complainant's Exhibit, Defendant's Machines A, D, C] embody the organization stated in that claim which Valvona sought to secure before he limited it by adding the qualifications in respect to the adaptability of the apparatus to rest upon the top surface of a stove, and in respect to the uniform thickness of the heat absorbing sides."

As already shown, the defendant's machines undoubtedly have a somewhat different configuration from the complainant's on their bottom face, but not sufficiently different to prevent their action in substantially the same way, to produce the same result, by substantially the same means. Sufficient has already been said, however, with reference to the heat absorbing and conducting sides of the mold, while as to the adaptability of the two machines to rest on the top surface of a stove nothing need be said, except that either will rest there if desired, or either can be supported, as the defendant's is, on trunnions, and by that means have its upper and lower plates exposed alternately to the fire. Under the strictest rules of estoppel that can be properly be applied to the complainant's case, the defendant must be adjudged to have infringed the patent in suit.

[4] The defense of laches has been interposed, but under the circumstances disclosed does not seem to require any special or protracted discussion. Mere laches does not usually bar a party, unless under circumstances which work an equitable estoppel against him. No such facts appear in this case. The defendant was repeatedly warned that he had adopted and was using a device which infringed the patent in suit. He thereupon sought the advice of counsel, and apparently in deference thereto made some slight changes in his apparatus, which he thenceforth continued to use. It is not perceived that he has been misled or induced to pursue any specific course of conduct by any act of the complainant, who on its part has meanwhile, with considerable diligence, pursued other infringers of its patent.

A decree will be entered in favor of the complainant, with costs, upon the ground of infringement.